Leonard M. FRAZIER, Petitioner,

v.

Alton HESSON, Respondent.

No. 99–2194–D/V.

United States District Court,
W.D. Tennessee,
Western Division.

March 30, 1999.

Leonard M. Frazier, Henning, TN, pro se.

## ORDER OF DISMISSAL ORDER DENYING CERTIFICATE OF APPEALABILITY AND ORDER CERTIFYING APPEAL NOT TAKEN IN GOOD FAITH

DONALD, District Judge.

### I. INTRODUCTION

Petitioner, Leonard M. Frazier, an inmate at West Tennessee State Prison (WTSP) in Henning, Lauderdale County, Tennessee, who was formerly confined at the Hardeman County Correctional Facility (HCCF), has filed a habeas petition under 28 U.S.C. § 2254, with a motion to proceed *in forma pauperis.* The motion is **GRANTED.** The Clerk shall record the respondent as Alton Hesson.[1]

### II. PROCEDURAL HISTORY

Frazier, who is serving an unspecified state sentence for an unspecified crime, complains that he has been confined in involuntary administrative segregation (IAS) and transferred to a maximum security facility in violation of his due process rights, postponing the date on which he will be granted a parole hearing, and preventing him from earning sentence credits that can shorten the time until his release eligibility date. Frazier contends that in October of 1997 officials at HCCF, a lower security facility, accused him of various disciplinary violations, confined him to IAS, and then transferred him to WTSP. He contends that at some point a disciplinary hearing board conducted a hearing and found him not guilty of the disciplinary charges. Nevertheless, WTSP officials have continued to keep him in segregation at a maximum security classification. Frazier seeks a writ of habeas corpus directing his release from segregation and return to a lower security classification.

### III. ANALYSIS

■ In general, an inmate does not have a liberty interest in assignment to a particular institution or to a particular security classification within that institution. *Olim v. Wakinekona,* 461 U.S. 238, 245, 103 S.Ct. 1741, 75 L.Ed.2d 813 (1983); *Meachum v. Fano,* 427 U.S. 215, 224–25, 96 S.Ct. 2532, 49 L.Ed.2d 451 (1976); *Montanye v. Haymes,* 427 U.S. 236, 243, 96 S.Ct. 2543, 49 L.Ed.2d 466 (1976); *Moody v. Daggett,* 429 U.S. 78, 88 n. 9, 97 S.Ct. 274, 50 L.Ed.2d 236 (1976); *Newell v. Brown,* 981 F.2d 880, 883 (6th Cir.1992); *Beard v. Livesay,* 798 F.2d 874, 876 (6th Cir.1986).

This case is another on the continuum on which many state prisoner issues eventually intersect: the line at which claims affecting merely a prisoner's liberty *within* confinement meet claims affecting the duration of that confinement. The analysis of these cases depends not only on the substantive claims asserted, but on the differing habeas remedies available to state prisoners.

Four Supreme Court decisions delineate this boundary: *Edwards v. Balisok,* 520 U.S. 641, 117 S.Ct. 1584, 1588–89, 137 L.Ed.2d 906 (1997); *Sandin v. Conner,* 515 U.S. 472, 483–86, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995); *Heck v. Humphrey,* 512 U.S. 477, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994); and *Preiser v. Rodriguez,* 411 U.S. 475, 93 S.Ct. 1827, 36 L.Ed.2d 439 (1973). The scope of this intersection was first clearly delineated in *Preiser,* which involved attempts by various New York state prisoners to challenge prison disciplinary board decisions to deprive them of sentence credits. The Supreme Court reasoned that:

> even if restoration of respondents' good-time credits had merely shortened the length of their confinement, rather than required immediate discharge from that

---

1. Petitioner listed Tennessee Department of Correction (TDOC) Commissioner Donal Campbell as the respondent. The only proper respondent to a habeas petition is the petitioner's custodian. *See* Rule 2(a), Rules Governing Section 2254 Cases in the United States District Courts.

confinement, their suits would still have been within the core of habeas corpus in attacking the very duration of their physical confinement itself. It is beyond doubt, then, that the respondents could have sought and obtained fully effective relief through federal habeas corpus proceedings.

411 U.S. at 487–88, 93 S.Ct. 1827. The federal courts have wrestled in the succeeding twenty-four years over how to distinguish between prisoner claims that seek relief from some condition within an undisputed period of confinement and those seeking to affect the actual duration of that confinement. As the implications of *Preiser* have percolated through the appellate courts, the Supreme Court and Courts of Appeal have limited certain types of claims to presentation through a habeas petition, limited others to relief available in a damages action under 42 U.S.C. § 1983, and held, in *Heck* and *Balisok,* that habeas relief is a prerequisite to presentation of certain civil rights actions.

One of the remaining undefined areas of this boundary is which federal habeas statute provides the prisoner the basis for a petition attacking the revocation of sentence credits or the extension of an early release date after he exhausts his available state remedy. In enunciating the statutory basis for this habeas remedy, the *Preiser* court referred to both of the federal habeas statutes, 28 U.S.C. §§ 2241, 2254, but without distinguishing between them. The Court then applied both the explicit exhaustion requirements of § 2254(b) and the implicit comity-based exhaustion prin-

ciples of § 2241 cases such as *Braden v. 30th Jud. Cir. Ct. of Kentucky,* 410 U.S. 484, 93 S.Ct. 1123, 35 L.Ed.2d 443 (1973), without specifically distinguishing which applied to a habeas petition seeking restoration of either sentence credits or a revoked early-release date. *Preiser* clarified that any demand for restoration of sentence credits or an early-release date must be sought through a habeas petition.

> [W]hen a state prisoner is challenging the very fact or duration of his physical imprisonment, and the relief he seeks is a determination that he is entitled to immediate release or a speedier release from that imprisonment, his sole federal remedy is a writ of habeas corpus.

411 U.S. at 500, 93 S.Ct. 1827. The Court did not distinguish, however, whether the writ should be sought under § 2241 or § 2254.

When *Preiser* was decided in 1973, any distinction between § 2241 and § 2254 was of little more than academic interest or importance in this context. As of April 24, 1996, however, the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), P.L. 104–132, Title I, § 102, 110 Stat. 1220 (Apr. 24, 1996), elevated that distinction to a preeminent position. Actions under § 2254 are now subject to a one-year statute of limitation. *See* 28 U.S.C. § 2244(d).[2] They are also subject to successive-petition limits, 28 U.S.C. § 2244(b), and various presumptions that favor upholding the state court's determination. *Id.* at § 2244(c), 28 U.S.C. § 2254(d), (e). Furthermore, appeals of district court or-

2. If § 2254 provides the remedy for state prisoners seeking release from segregation, then Frazier's federal habeas claim could be barred by the statute of limitations, because it was not filed until March of 1999, over one year after the October 1997 decision to confine him to IAS. If this is a habeas petition under § 2241, then arguably the period of limitations is irrelevant.

The Court notes "arguably" because the limitations provision states: "A 1–year period of limitation shall apply to an application for a *writ of habeas corpus* by a person in custody pursuant to the judgment of a State court."

28 U.S.C. § 2244(d)(1) (emphasis added). Other references in § 2244 to § 2254 are explicit. *See, e.g.,* § 2244(b) (enunciating successive petition restrictions).

Alternatively, the statute of limitations may be a non-issue because the administrative decision to confine a prisoner to IAS is usually not a discrete one-time act, but a continuing administrative process subject to regular and periodic review. In this case, the Court can pretermit the issue because the petitioner is not entitled to habeas review, regardless of the applicability of the statute of limitations.

ders in petitions brought under the two different statutes are not necessarily subject to the same procedural rules.[3]

Federal courts have heretofore operated by assuming the applicability of a habeas remedy in a case such as this without detailed analysis of the specific foundation for that remedy. The Sixth Circuit has issued a number of unpublished opinions citing *Preiser* as authority for the proposition that § 2254 provides the remedy for a prisoner claiming that a violation of due process in a prison disciplinary proceeding has deprived him of sentence or good-time credits. *Carney v. Sundquist,* No. 96–5320, 1997 WL 135619 (6th Cir. Mar.24, 1997) (perfunctorily applying *Heck* and *Preiser* to sentence credit claim); *Barnes v. Lewis,* No. 93–5698, 1993 WL 515483 (6th Cir. Dec. 10, 1993) (following *Preiser*); *Pettigrew v. Bass,* No. 92–5373, 1992

WL 245916 (6th Cir. Sept.29, 1992) (applying *Preiser* and holding Tennessee prisoner's challenge to early release date extension must be .made under § 2254); *Privett v. Pellegrin,* No. 85–5049, 1986 WL 16899 (6th Cir. Apr. 17, 1986) (interpreting *Preiser* as holding that habeas petition seeking restoration of sentence-credits is governed by § 2254 exhaustion requirement). *Cf. Branham v. Koehler,* No. 89–1709, 1989 WL 136116 (6th Cir. Nov.13, 1989) (following *Preiser* and holding that petitioner failed to exhaust state remedies before filing petition under § 2254). These cases, while not binding because unpublished, nevertheless indicate that the Sixth Circuit considers this matter resolved in light of *Preiser.*[4]

However, while informative, these cases do not directly address the issue presented here, whether habeas is available to chal-

---

**3.** For instance, as discussed at the close of this order, the United States Court of Appeals for the Sixth Circuit has concluded that a petitioner's *in forma pauperis* standing when appealing dismissal of a § 2254 petition is determined subject to Fed. R.App. 24(a) rather than under the Prison Litigation Reform Act of 1995, 28 U.S.C. § 1915 (applicable to civil rights claims). That Court has not addressed this issue for § 2241 petitions, however.

**4.** The United States Court of Appeals for the Seventh Circuit has issued a number of opinions both pre- and post-AEDPA, noting that the remedy for a prisoner claiming a violation of due process in a prison disciplinary context is a federal writ of habeas corpus. *See, e.g., Stone–Bey v. Barnes,* 120 F.3d 718, 721 (7th Cir.1997) (following *Balisok* and noting that prisoner could have filed a federal writ); *Shephard v. Duckworth,* No. 96–1890, 1997 WL 9774 at n. 2 (7th Cir. Dec.12, 1996) (holding § 2254 applies to administrative proceedings); *Evans v. McBride,* 94 F.3d 1062, 1063–64 (7th Cir.1996) (post-AEDPA decision holding its presumption-of-correctness principles apply to prison administrative body imposing disciplinary penalties); *Hanson v. Heckel,* 791 F.2d 93, 96 (7th Cir.1986) (holding § 1983 suit seeking restoration of sentence credits properly construed as § 2254 petition); *Hundley v. McBride,* 908 F.Supp. 601, 602 (N.D.Ind.1995) (following *Hanson* ). *See also Sweeney v. Parke,* 113 F.3d 716, 719 (7th Cir.1997) (following *McBride* ).

Other courts have also held without analysis that the prisoner's remedy is a § 2254 petition. *Janke v. Price,* No. 96–1493, 1997 WL 537962 at *5 (10th Cir. Sept.2, 1997) (unpublished); *Hudson v. Hedgepeth,* 92 F.3d 748, 749 (8th Cir.1996) (rejecting § 2254 petition based on pre-AEDPA statute).

The difficulty with all of these cases, in addition to the low rate of publication, is that the lack of concrete analysis leaves the Court with little foundation other than *Preiser* for the conclusion that the proper remedy is § 2254. *Preiser* itself cited no authority for its extension of § 2254 to this issue. Pre-*Preiser* cases are devoid of analysis, and generally devoid even of statutory references. When a case does provide authority for the proposition, the trail of caselaw runs into a dead end of inapplicable holdings. For instance, prior to the AEDPA's enactment, the Seventh Circuit decided that "we are … certain that a habeas corpus petition is the proper procedural vehicle to challenge a loss of good-time credits and a demotion in Time Earned Credits." *Harris v. Duckworth,* 909 F.2d 1057, 1058 (7th Cir.1990) (citing *Jackson v. Carlson,* 707 F.2d 943, 946 (7th Cir.1983)). *Carlson,* however, was not a state prisoner case, but a habeas petition under 28 U.S.C. § 2241 brought by federal prisoners. The Seventh Circuit's body of caselaw sheds no light on whether § 2254 is in fact the proper remedy. Given that Frazier does not allege an actual deprivation of vested sentence credits, these cases do not require the Court to find that his claim is cognizable under § 2254.

lenge a prisoner's confinement in IAS. The closest Sixth Circuit case is *Gunnett v. Mayor*, No. 91–1329, 1991 WL 182640 (6th Cir. Sept.18, 1991), which applied *Preiser* and held that a challenge to a disciplinary conviction that resulted only in a potential postponement of parole was not cognizable under § 2254.

Examining the language of the two statutes provides no enlightenment. Section 2254 states that "a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Section 2241 states: "The writ of habeas corpus shall not extend to a prisoner unless—... He is in custody in violation of the Constitution or laws or treaties of the United States ...." Arguably, a prisoner complaining of more onerous conditions of confinement is not attacking "custody" imposed by a state court, and, therefore, cannot invoke § 2254.

In this circumstance, the Court pretermits the issue. Frazier should not be able to invoke either § 2254 or § 2241 to attack his confinement to segregation or assignment to a maximum security classification prison because . neither condition constitutes "custody" within the meaning required by the Constitution for a federal court to exercise habeas jurisdiction. Rather, as explained below, these are merely changes in the conditions of confinement pursuant to an administrative decision by prison officials.

In *Sandin*, 515 U.S. at 483–86, 115 S.Ct. 2293, the Supreme Court clarified by addressing what changes in confinement conditions implicate due process protections.

*Sandin* revisited the Court's earlier decision of *Wolff v. McDonnell*, 418 U.S. 539, 564–71, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974). In *Wolff* the Court had identified the procedural requirements prison officials must adopt to satisfy due process when depriving a prisoner of various liberty interests, including deprivation of sen-

tence credits and confinement to segregation. In *Hewitt v. Helms*, 459 U.S. 460, 472, 103 S.Ct. 864, 74 L.Ed.2d 675 (1983), the Court limited the *Wolff* requirements applicable to purely administrative, rather than punitive segregation, but broadened the scope of federal court authority over prison administration by recognizing that the mandatory language of state regulations could create liberty interests protected by due process requirements. Courts were required to consider whether "the repeated use of explicitly mandatory language in connection with requiring specific substantive predicates demands a conclusion that the State [or federal government] has created a protected liberty interest." *Hewitt*, 459 U.S. at 472, 103 S.Ct. 864. *Sandin*, however, rejected *Hewitt*, and much of the lower-court jurisprudence that relied on *Wolff*. Without explicitly overruling *Hewitt* itself, *Sandin* returned to the question left open in *Wolff*, 418 U.S. at 564–71, 94 S.Ct. 2963: whether inmates even have a liberty interest in freedom from segregation, punitive or administrative. The Court rejected *Hewitt*'s methodology and concluded that they do not.

The time has come to return to the due process principles we believe were correctly established and applied in *Wolff* and *Meachum*. Following *Wolff*, we recognize that States may under certain circumstances create liberty interests which are protected by the Due Process Clause. *See also Board of Pardons v. Allen*, 482 U.S. 369, 107 S.Ct. 2415, 96 L.Ed.2d 303 (1987). But these interests will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, *see, e.g., Vitek [ v. Jones*, 445 U.S. 480,] 493, 100 S.Ct. 1254, 63 L.Ed.2d 552 [(1980)] (transfer to mental hospital), and *Washington [ v. Harper*, 494 U.S. 210,] 221–222, 110 S.Ct. 1028, 108 L.Ed.2d 178 [(1990)] (involuntary administration of psychotropic drugs), nonetheless imposes atypical and signifi-

cant hardship on the inmate in relation to the ordinary incidents of prison life.

Conner asserts, incorrectly, that any state action taken for a punitive reason encroaches upon a liberty interest under the Due Process Clause even in the absence of any state regulation. Neither *Bell v. Wolfish,* 441 U.S. 520, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979), nor *Ingraham v. Wright,* 430 U.S. 651, 97 S.Ct. 1401, 51 L.Ed.2d 711 (1977), requires such a rule.... We hold that Conner's discipline in segregated confinement did not present the type of atypical, significant deprivation in which a state might conceivably create a liberty interest.... We hold, therefore, that neither the Hawaii prison regulation in question, nor the Due Process Clause itself, afforded Conner a protected liberty interest that would entitle him to the procedural protections set forth in *Wolff.* The regime to which he was subjected as a result of the misconduct hearing was within the range of confinement to be normally expected for one serving an indeterminate term of 30 years to life.

*Sandin,* 515 U.S. at 483–84, 486, 487, 115 S.Ct. 2293 (footnotes and some citations omitted).

■ *Sandin* thus focuses not on the content of regulations, but on the "nature of the deprivation" visited upon the inmate. *Id.* at 481, 115 S.Ct. 2293. Absent "atypical and significant hardship," a change in the conditions of confinement simply does not inflict a cognizable injury that merits constitutional protection, regardless of the motivation of the official when making the change. *Id.* at 484–86, 115 S.Ct. 2293. Thus language in state laws or prison regulations no longer creates a liberty interest protected by the Due Process Clause. *Rimmer–Bey v. Brown,* 62 F.3d 789, 790–91 (6th Cir.1995). Rather, from now on, when analyzing due process claims federal courts look neither to state laws or regulations to ascertain whether they create a liberty interest in connection with a housing assignment, imposition of disciplinary penalties, reclassification, or a prison transfer, nor to the subjective mo-

tives of prison officials for effecting such changes. Instead, the Court focuses on the nature of the deprivation itself.

After [*Sandin*], prisoners may no longer peruse state statutes and prison regulations searching for the grail of limited discretion. Instead, a prisoner has a liberty interest only in "freedom[s] from restraint ... impos[ing] atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id.* at 472, 115 S.Ct. at 2294 (emphasis added).

*Orellana v. Kyle,* 65 F.3d 29, 31 (5th Cir. 1995). According to *Orellana,* only deprivations that clearly impinge on the *duration* of confinement, will henceforth even possibly qualify for constitutional "liberty" status. *Id.* at 31–32.

■ The allegations that plaintiff was accused of a disciplinary offense, confined to IAS, reclassified, and transferred to WTSP do not include any allegation of an "atypical and significant hardship" "in relation to the ordinary incidents of prison life" and thus do not allege the deprivation of any liberty interest. *See, e.g., Mackey v. Dyke,* 111 F.3d 460, 462–63 (6th Cir. 1997). This conclusion is clear from *Sandin*'s reliance on *Wakinekona,* 461 U.S. at 249–50, 103 S.Ct. 1741, in which the Court held that an inmate's transfer to California from a Hawaii prison did not work a substantial hardship or deprive him of a constitutional right. If a six-thousand mile transfer is not atypical and significant, neither is an intra-state transfer from Hardeman to Lauderdale County.

■ Frazier's petition, however, attempts to circumvent *Sandin* by an argument analogous to that made in *Orellana*—that the assignment to IAS directly affects the "duration" of his confinement. Thus, he contends that the denial of the opportunity *to earn* sentence credits will prolong his sentence and, therefore, affect that sentence's duration in a manner implicating his right to due process. This argument, however, misreads *Sandin* and *Orellana. Orellana* enunciates the widest possible reach of *Sandin*'s delimitation of

deprivations implicating the Due Process Clause. Not every decision that might *conceivably* or *arguably* have some effect on the time an inmate serves in confinement triggers due process scrutiny. Any claim based on the speculative effect of segregation, a particular classification, or a prison assignment on the potential right to earn sentence credits is clearly foreclosed by *Sandin,* 515 U.S. at 484–87, 115 S.Ct. 2293.[5]

■ Furthermore, it is clear Frazier has no actual liberty interest at stake, because there is no right under the Constitution to earn sentence credits. *Hansard v. Barrett,* 980 F.2d 1059, 1062 (6th Cir. 1992). Neither is there any fundamental right to parole or to release from a sentence of incarceration that has itself been lawfully imposed. *See Greenholtz v. Nebraska Penal Inmates,* 442 U.S. 1, 7, 99 S.Ct. 2100, 60 L.Ed.2d 668 (1979). Tennessee law and regulations do not create a right to parole, *Wright v. Trammell,* 810 F.2d 589, 591 (6th Cir.1987), or to earn such credits. *See* Tenn.Code Ann. § 41–21–236(a)(2) (1990).[6] Accordingly, there is no right to due process in connection with segregation, transfer, or classification deci-

sions that have such an uncertain effect on a particular inmate's release.

■ This conclusion is also clear from the decisions in *Heck* and *Balisok. Heck* held that any *civil rights* claim under § 1983 requiring proof of facts or law that would necessarily call into question a pending state criminal prosecution or state court conviction would not even accrue until the state court prosecution is terminated in the defendant's favor, either by a favorable jury verdict or by a post-verdict ruling setting aside a conviction. This decision is clearly based on the potential that such damages actions have for interfering with existing court judgments that set the limits for a prisoner's sentence. Similarly, *Balisok,* applied *Heck* to prison disciplinary cases. According to *Balisok,* when a prisoner brings a § 1983 action claiming that he was deprived of due process during a disciplinary proceeding that resulted in the revocation of vested sentence-credits, and the claim if proved would "necessarily imply the invalidity of the punishment imposed," no cause of action accrues until the credits are restored, because the decision would directly affect the actual length of confinement.[7] These decisions reinforce

---

5. In addition to rejecting any notion that any convicted prisoner can ever enjoy a liberty interest in freedom from mere confinement in isolation or segregation, the *Sandin* court noted that any possible effect on Conner's future release was too attenuated to constitute a deprivation of a liberty interest protected by the Due Process Clause. *Sandin,* 515 U.S. at 487, 115 S.Ct. 2293.

6. Each inmate who exhibits good institutional behavior and/or who exhibits satisfactory performance within a program may be awarded time credits toward the sentence imposed, varying between one (1) day and sixteen (16) days for each month served, with not more than eight (8) days for each month served for good institutional behavior and not more than eight (8) days for each month served for satisfactory program performance in accordance with the criteria established by the department. No prisoner shall have the right to any such time credits nor shall any prisoner have the right to participate in any particular program and may be transferred from one (1) assignment to another without cause.

Tenn.Code Ann. § 41–21–236(a)(2) (emphasis added).

7. Of course, under *Preiser,* a restoration of credits can only be sought in a habeas proceeding and the relief cannot be sought in federal court unless the prisoner first presents his claim to the state court and exhausts the remedy provided by the state.

As a result, prisoners who attempt to file a federal court challenge to a prison administrative decision, whether or not labeled as a disciplinary board decision, find that if they allege punishment only by confinement to segregation they enjoy no liberty interest and thus no due process protection at all, while if they allege punishment by actual deprivation of sentence credits or an extension of a release or parole date their claim is not cognizable under § 1983 until the penalty has been overturned. In either case, the state prisoner claiming a due process violation during a prison disciplinary proceeding has no federal forum for his damages claim.

the Court's conclusion that neither confinement to segregation, transfers, nor increased security classifications constitute custody because they do not directly lengthen the duration of imprisonment.

■ Nor does the increased security classification constitute an atypical and significant hardship. As explained above, there is no constitutional right to a particular security classification. Plaintiff's belief that the classification is unwarranted does not elevate this issue to one of constitutional significance.

[A]n inmate's "subjective expectations [are not] dispositive of the liberty interest analysis." *Sandin,* 515 U.S. at 486 n. 9, 115 S.Ct. 2293. Rather, the *Sandin* standard invokes a comparison of the punitive restraint with what an inmate can expect from prison life generally to determine whether there has resulted an "atypical, significant deprivation," *Williams v. Ramos,* 71 F.3d 1246, 1249 (7th Cir.1995), which presents "dramatic departures from the basic conditions and ordinary incidents of prison sentences." *Moorman v. Thalacker,* 83 F.3d 970, 972 (8th Cir.1996).

*Wilson v. Harper,* 949 F.Supp. 714, 721 (N.D.Iowa 1996) (citation form updated).

As plaintiff has not alleged any atypical and significant hardship, has failed to allege the deprivation of a federally recognized liberty interest, and is not entitled to any of the procedural protections enunciated in *Wolff* or its progeny, he cannot establish that he is in custody for purposes of seeking habeas relief.

■ As is also clear under *Sandin,* any violation of TDOC procedural regulations in classifying plaintiff or assigning him to a particular prison does not violate his due process rights so as to give rise to a habeas claim. Even before *Sandin,* it was clear that the scope of "the procedural due process required before one may be deprived of a liberty interest is governed by federal constitutional law and not state law." *Black v. Parke,* 4 F.3d 442, 447 (6th Cir.1993). Procedural requirements alone do not create a substantive liberty interest,

and mere violation of such procedures is not a constitutional violation. *Hewitt,* 459 U.S. at 471, 103 S.Ct. 864; *Levin v. Childers,* 101 F.3d 44, 46 (6th Cir.1996) ("there is a fundamental logical flaw in viewing the process as a substantive end in itself"); *Harrill v. Blount County, TN,* 55 F.3d 1123, 1125 (6th Cir.1995) (state law cannot create a federal constitutional right); *Spruytte v. Walters,* 753 F.2d 498, 508 (6th Cir.1985) (violation of state law does not by itself constitute deprivation of due process). Thus even before *Sandin,* use of mandatory language in mere procedural regulations did not create any substantive liberty interest. *See McLaurin v. Morton,* 48 F.3d 944, 947 (6th Cir.1995). After *Sandin,* it is even clearer that mandatory language in prison regulations does not create a liberty interest protected by the Due Process Clause. *Rimmer–Bey,* 62 F.3d at 790–91. Thus, to the extent that the petition should be construed as asserting that the defendants did not comply with TDOC, HCCF, or WTSP regulations in connection with his assignment to IAS, his transfer, or his security classification, the petitioner has not suffered any deprivation of due process because of such noncompliance.

Furthermore, even if the combination of conditions has affected the length of Frazier's sentence by postponing his release eligibility date, he cannot demonstrate the constitutional violation that is a prerequisite to habeas relief.

■ Tenn.Code Ann. § 40–35–501 governs the calculation of a release eligibility date. Among other provisions, it provides in pertinent part that the "release eligibility date provided for in this section is the earliest date an inmate convicted of a felony is eligible for parole . . . ." Tenn.Code Ann. § 40–35–501(k) (1997). Actual release on parole is governed by Tenn.Code Ann. § 40–35–503(b) (1990) and Tenn.Code Ann. § 40–28–117 (1990). "Release on parole is a privilege and not a right . . . ." Tenn.Code Ann. § 40–35–503(b).

Parole being a privilege and not a right, no prisoner shall be released on parole merely as a reward for good conduct or efficient performance of duties assigned in prison, but only if the board is of the opinion that there is reasonable probability that such prisoner, if released, will live and remain at liberty without violating the law, and that the prisoner's release is not incompatible with the welfare of society.

As explained, *supra*, there is no right under the Constitution to parole or early release. *Greenholtz*, 442 U.S. at 11, 99 S.Ct. 2100. It is well established that the above Tennessee statutes do not create a right to parole. *See Wright*, 810 F.2d at 591.

■ Accordingly, the effect of an assignment to involuntary administrative segregation on the ability to earn sentence credits which, if retained and not later forfeited, might affect the calculation of an early release date does not affect an actual liberty interest that is subject to review under § 2254. Unlike vested sentence credits, which *Wolff* indicated amounted to a liberty interest in that case, a mere inability to earn credits that might affect an early release date cannot amount to an interest of constitutional significance.

This is clearly so in light of *Wright v. Trammell*. If habeas review is not available for the substantive decision to deny parole altogether, because there is no liberty interest in such parole and thus no right to any particular due process before its denial, then there cannot be a liberty interest in the ability to earn credits that might have some effect on the particular date on which the parole authorities may first decide to exercise their purely discretionary and unreviewable authority.

Those cases in which courts have reviewed decisions to revoke sentence credits are clearly distinguishable because the courts found that the credits actually reduced the sentence the prisoner would have had to serve. In Tennessee, by contrast, the effect of sentence credits is only to affect a release eligibility date, which is nothing more than a unilateral expectancy. It is thus devoid of due process protection.

As the calculation of that date is not within the protections of the Due Process Clause, no Constitutional infirmity can attach to the manner in which prison officials calculate or change it. The petitioner cannot establish any constitutional basis for the Court's review of the disciplinary board decision, and thus no right to habeas review.

■ This conclusion is not altered by the language of the statute that "[e]xtensions in the release eligibility date provided for herein and in other sections of this chapter shall only be imposed following a hearing conducted in accordance with due process of law." This merely enunciates a state law procedural requirement, not the existence of a liberty interest. Again, after *Sandin*, language in state laws or prison regulations no longer creates a liberty interest protected by the Due Process Clause. *Rimmer–Bey*, 62 F.3d at 790–91. Accordingly, those state procedural limitations do not entitle Frazier to invoke either § 2254 or § 2241 to modify the administrative decision of prison officials at either HCCF or WTSP.

Therefore, as it "plainly appears from the face of the petition and any exhibits annexed to it that the petitioner is not entitled to relief in the district court," summary dismissal prior to service on the respondent is proper. Rule 4, Rules Governing Section 2254 Cases in the United States District Courts. The petition is DISMISSED.

## IV. *APPEAL ISSUES*

■ The Court must also determine whether to issue a certificate of appealability. Under 28 U.S.C. § 2253(a), the district court considers whether to issue a certificate of appealability whenever it dismisses a § 2254 petition. Under *Lyons v. Ohio Adult Parole Auth.*, 105 F.3d 1063, 1073 (6th Cir.1997), § 2253 codifies the standard for issuing a certificate of proba-

ble cause found in prior § 2253, which was essentially a codification of *Barefoot v. Estelle,* 463 U.S. 880, 893, 103 S.Ct. 3383, 77 L.Ed.2d 1090 (1983). To issue the certificate, the Court must find that the petitioner has made a substantial showing of the denial of a federal right. This in turn requires that he demonstrate: that the issues on appeal are debatable among jurists of reason; that a Court could resolve the issues in a different manner; or that the questions are adequate to deserve encouragement to proceed further. For the reasons discussed above, the petition is clearly without merit and the petitioner cannot present a question of some substance about which reasonable jurists could differ. The Court therefore denies a certificate of appealability.

■ Finally, the Court must decide whether plaintiff is entitled to proceed *in forma pauperis* on appeal. Although the Sixth Circuit has concluded that the various filing fee payment requirements and good faith certifications of amended § 1915 do not apply to § 2254 cases, it has not resolved in a published opinion whether these requirements apply to § 2241 cases. *Kincade v. Sparkman,* 117 F.3d 949, 951–52 (6th Cir.1997). *Cf. McGore v. Wrigglesworth,* 114 F.3d 601 (6th Cir.1997) (instructing courts regarding proper PLRA procedures in prisoner civil-rights cases, without mentioning § 2241 petitions).

The Tenth Circuit, however, has held that the provisions of the PLRA do not apply to habeas cases of any sort or to § 2255 motions. *See McIntosh v. United States Parole Comm'n,* 115 F.3d 809, 810 (10th Cir.1997); *United States v. Simmonds,* 111 F.3d 737, 743 (10th Cir.1997). An unpublished Sixth Circuit opinion has adopted this approach in affirming a decision from this district. *Graham v. United States Parole Com'n,* No. 96–6725, 1997 WL 778515 (6th Cir. Dec.8, 1997), *aff'g, Graham v. United States,* No. 96–3251–Tu (W.D. Tenn. Dec. 4, 1996). Because the Court finds the reasoning of *McIntosh* persuasive, and because the Court finds that this conclusion naturally follows from the Sixth Circuit's decision in *Kincade,* the Court concludes that the PLRA does not apply to § 2241 petitions.

■ Regardless of whether the petition is brought under § 2254 or § 2241, pursuant to *Kincade,* the petitioner must seek leave to proceed *in forma pauperis* from the district court under Fed. R.App. 24(a). That Rule provides:

A party to an action in a district court who desires to proceed on appeal *in forma pauperis* shall file in the district court a motion for leave to so proceed, together with an affidavit, showing, in the detail prescribed by Form 4 of the Appendix of Forms, the party's inability to pay fees and costs or to give security therefor, the party's belief that that party is entitled to redress, and a statement of the issues which that party intends to present on appeal.

The Rule further requires the district court to certify in writing whether the appeal is taken in good faith, and to deny the certificate if the appeal would be frivolous.

■ The good faith standard is an objective one. *Coppedge v. United States,* 369 U.S. 438, 445, 82 S.Ct. 917, 8 L.Ed.2d 21 (1962). An appeal is not taken in good faith if the issue presented is frivolous. *Id.* Accordingly, it would be inconsistent for a district court to determine that a complaint is too frivolous to be served, yet has sufficient merit to support an appeal *in forma pauperis. See Williams v. Kullman,* 722 F.2d 1048, 1050 n. 1 (2d Cir. 1983). The same considerations that lead the Court to dismiss this petition as meritless also compel the conclusion that an appeal would be frivolous. It is therefore CERTIFIED, pursuant to F.R.A.P. 24(a), that any appeal in this matter by petitioner is not taken in good faith, and he may not proceed on appeal *in forma pauperis.*