REVISED, August 13, 1998

UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

97-10818
_____


SAMUEL JOHN MAJOR DAVIS, JR.,

Petitioner-Appellant,

versus

VINCENT J. FECHTEL, JR., Commissioner
of the United States Parole Commission;
VICTOR M. F. REYES, Commissioner of the
United States Paroles Commission; G.
MACKENZIE RAST, Commissioner of the
United States Parole Commission,

Respondents-Appellees.

_____

Appeal from the United States District Court for the
Northern District of Texas
_____

August 7, 1998

Before DAVIS, EMILIO M. GARZA, and BENAVIDES, Circuit Judges.

BENAVIDES, Circuit Judge:

Samuel John Major Davis, Jr., a federal prisoner, appeals the district court's dismissal of his 28 U.S.C. section 2241 habeas petition as an abuse of the writ.[1] This case is now before us on a motion for leave to proceed *in forma pauperis.* We write

_____

[1] Davis's primary argument on appeal is that the district court erred in construing his mandamus action as a section 2241 habeas petition. As discussed below, the district court properly construed Davis's petition as one for habeas relief under section 2241, rather than a petition for mandamus under 28 U.S.C. section 1361.

principally to decide an issue not yet addressed in this circuit, whether the Prison Litigation Reform Act (hereinafter PLRA)[2] applies to section 2241 habeas petitions. Concluding that Congress did not intend for the term "civil action" to include section 2241 habeas proceedings, we find that the PLRA does not apply. Additionally, we determine that the district court properly dismissed Davis's third petition as an abuse of the writ. Because Davis has failed to present a nonfrivolous issue on appeal, we deny his motion for leave to proceed *in forma pauperis.*

I.    PROCEDURAL HISTORY

In 1994, Davis filed a section 2241 habeas petition alleging that the United States parole commission had failed to comply with its own regulations and federal statutes in denying him parole. The district court denied his petition, and this Court affirmed on the merits. Davis subsequently filed a second section 2241 petition, which the district court dismissed as an abuse of the writ. On appeal, this Court dismissed it as an abuse of the writ.

Undaunted, Davis filed a third suit (styled as a mandamus under 28 U.S.C. section 1361), purporting to seek only a directive to the individual members of the parole commission to correct errors that he complained of in a previous petition.[3]  The court

---

[2]    Congress enacted the PLRA as Title VIII of the Omnibus Consolidated Rescissions and Appropriations Act of 1996, Pub. L. 104-134, 110 Stat. 1321 (1996).  Section 804 of the PLRA amends 28 U.S.C. section 1915 to change the procedures prisoners must follow when seeking to proceed *in forma pauperis* in civil actions.

[3]    Davis initially filed this action in the United States District Court for the District of Columbia, which construed the action as one seeking habeas relief, and transferred the case to

2

below construed Davis's petition as a section 2241 habeas petition and concluded that because the grounds for relief had previously been determined to constitute an abuse of the writ, the instant petition also was an abuse of the writ and dismissed the petition with prejudice.

Davis then moved to proceed on appeal *in forma pauperis.* After reviewing Davis's inmate trust record and observing that Davis had received more than $1200 into his inmate account in recent months, the district court denied the motion, concluding that Davis could afford the $105 appellate filing fee. In its order of denial, the district court determined that the PLRA was not applicable to a section 2241 habeas petition. Before us now is Davis's "motion for leave to file appeal without prepayment of filing fee and to pay the $105 filing fee in (4) installment payments."

II. ANALYSIS

A. HABEAS OR MANDAMUS ACTION

Davis strenuously argues that the district court erred in construing his mandamus action as a section 2241 habeas petition. This Court has held that a court may liberally construe a *pro se* petitioner's pleading and treat it as a habeas corpus petition, where appropriate. *See Russell v. Knight,* 488 F.2d 96, 97 (5th Cir 1973) (construing mandamus petition as a section 2254 habeas petition).

Mandamus is, of course, an extraordinary remedy. *In re Stone*,

_____

the Northern District of Texas.

3

118 F.3d 1032, 1034 (5th Cir. 1997). To obtain a mandamus order, a petitioner must establish "(1) a clear right to the relief, (2) a clear duty by the respondent to do the act requested, and (3) the lack of any other adequate remedy." *Id.*

Contrary to Davis's contentions, his challenge directly implicates the duration of his present confinement. He requests that a mandamus issue to order the parole commission to perform an act that would reduce his sentence. As such, his claim is challenging the execution of his sentence and therefore is a section 2241 claim. *United States v. Tubwell,* 37 F.3d 175, 177 (5th Cir. 1994) (challenging execution of sentence is section 2241 claim).

Indeed, the District of Columbia Circuit has held that mandamus was not the appropriate avenue to redress a federal prisoner's challenge to his parole eligibility date and that section 2241 provided the *exclusive* remedy. *Chatman-Bey v. Thornburgh,* 864 F.2d 804, 808-810 & n.5, 814 (D.C. Cir. 1988). We need not determine today, however, whether habeas corpus is the exclusive remedy for a federal prisoner bringing a challenge to the execution of his sentence. Clearly, habeas corpus was available to Davis, and his abuse of the Great Writ did not render it unavailable or inadequate. Thus, the district court properly construed Davis's pleading as one falling under section 2241.

B.   WHETHER THE PLRA APPLIES

Next, we must determine whether the PLRA's financial screening and assessment requirements apply to 28 U.S.C. § 2241 habeas

4

proceedings.  The PLRA amended 28 U.S.C. § 1915 to impose filing fee obligations on a prisoner who "brings a civil action or files an appeal in forma pauperis."  § 1915(b)(1).[4]  Here, the question is whether a § 2241 habeas proceeding is a "civil action" within the meaning of the PLRA.

When interpreting a statute, we first look to its plain language.  *Sutton v. United States,* 819 F.2d 1289, 1294 (5th Cir. 1987).  "Specific words within a statute, however, may not be read in isolation of the remainder of that section or the entire statutory scheme."  *Id.* at 1293.

It is true that habeas corpus proceedings are technically "civil actions."  Nevertheless, the Supreme Court has made clear that that "label is gross and inexact" and that "the proceeding is unique."  *Harris v. Nelson,* 394 U.S. 286, 293-94, 89 S.Ct. 1082, 1087 (1969).  We must presume, of course, that Congress was aware of the construction courts had given to the terms in the statute. *Sutton,* 819 F.2d at 1294.

Although this Court has not addressed the precise question of whether the PLRA applies to section 2241 proceedings,[5] we have determined that actions brought under 28 U.S.C. §§ 2255 and 2254 are not "civil actions" for the purposes of the PLRA.  *United*

---

[4]  The prisoner must "pay the full amount of a filing fee." The full amount is not required upon filing.  The court assesses a partial filing fee and certain monthly payments are to be made in accordance with § 1915.

[5]  In *Ojo v. I.N.S.,* 106 F.3d 680 (5th Cir. 1997), a § 2241 proceeding, we determined that the PLRA did not apply  because the petitioner, a detainee who was about to be deported, was not a "prisoner" within the meaning of § 1915(a)(2).

*States v. Cole*, 101 F.3d 1076 (5th Cir. 1996) (§ 2255); *Carson v. Johnson*, 112 F.3d 818 (5th Cir. 1997)(§ 2254). In *Cole*, this Court looked to the holdings of three other circuits which had recognized that although habeas proceedings are technically "civil actions," there are several considerations that counsel against applying the PLRA to them.[6] The Third Circuit stated that habeas proceedings were of a hybrid nature, and a plethora of case law demonstrated that habeas proceedings were not necessarily encompassed by the phrase "civil action." *Santana*, 98 F.3d at 754-55.

Further, we found the following analysis from the Second Circuit persuasive:

> First, the [PLRA] was aimed primarily at prisoners' suits challenging prison conditions, many of which are routinely dismissed as frivolous. There is nothing in the text of the [PLRA] or its legislative history to indicate that Congress expected its filing fee payment requirements to apply to habeas corpus petitions. Second, we note that Congress has endeavored to make the filing of a habeas corpus petition easier than the filing of a typical civil action by setting the district court filing fee at $5, compared to the $120 applicable to civil complaints . . . . Third, Congress gave specific attention to perceived abuses in the filing of habeas corpus petitions by enacting Title I of the AEDPA.[7] That title imposes several new restrictions on habeas corpus petitions, but makes no change in filing fees or in a

---

[6] *Reyes v. Keane*, 90 F.3d 676 (2d Cir. 1996); *Santana v. United States*, 98 F.3d 752 (3d Cir. 1996); *Martin v. United States,* 96 F.3d 853 (7th Cir. 1996).

[7] Title I of the Antiterrorism and Effective Death Penalty Act (hereinafter AEDPA) of 1996, sections 101-108, Pub.L. No. 104-132, 110 Stat. 1214, 1217-26 (1996) (to be codified at 28 U.S.C. sections 2244-2266; Fed.R.App. P. 22) became effective two days prior to the PLRA.

> prisoner's obligation for payment of existing
> fees.

*Cole,* 101 F.3d at 1077 (quoting *Reyes,* 90 F.3d at 678) (footnote added).

Additionally, the Seventh Circuit observed a practical difficulty with applying the PLRA to habeas proceedings. If a prisoner previously had filed three frivolous suits, he could not file a petition for habeas relief without paying the full filing fee.[8] "This result would be contrary to a long tradition of ready access of prisoners to federal habeas corpus, as distinct from their access to tort remedies." *Martin,* 96 F.3d at 855-56. Finding these reasons persuasive, this Court held that the PLRA did not apply to § 2255 proceedings. *Cole*, 101 F.3d at 1077.

Not long after our holding in *Cole* regarding section 2255 actions, we addressed whether the PLRA applied to section 2254 proceedings. *Carson*, 112 F.3d 818. In that case, we opined that all the rationales set forth in *Cole* for not applying the PLRA to section 2255 actions "apply with equal, if not greater, force to 28 U.S.C. § 2254 petitions . . . ." Therefore, we held that the PLRA did not apply to section 2254 proceedings.

Likewise, we believe the above stated reasons for not applying the PLRA to sections 2254 and 2255 cases would also apply to habeas

---

[8] We recognize that the full district court filing fee for habeas petitions, including those filed pursuant to section 2241, is only five dollars. Although five dollars is a very small amount, "if one does not have it and is unable to get it the fee might as well be [an exorbitant sum]." *Smith v. Bennett*, 365 U.S. 708, 712, 81 S.Ct. 895, 897 (1961). On appeal, the filing fee is $105.

petitions brought pursuant to section 2241. There is, however, a split in the circuits on this issue.

The Tenth Circuit held that "[b]ecause the nature of a § 2241 proceeding is the same as § 2254 and § 2255 proceedings," § 2241 actions are not "civil actions" within the meaning of the PLRA. *McIntosh v. U.S. Parole Commission,* 115 F.3d 809, 911 (10th Cir. 1997). Recognizing that "a § 2241 attack on the execution of a sentence may challenge some matters that occur at prison, such as deprivation of good-time credits and other prison disciplinary matters," the Tenth Circuit nevertheless opined that this does not make a § 2241 action like a "condition of confinement" lawsuit. An execution-of-sentence claim is still challenging the fact or duration of a prisoner's confinement. The prisoner is seeking earlier release as opposed to monetary compensation for prison conditions.

On the other hand, the Seventh Circuit held that the PLRA did apply to section 2241 proceedings. *Newlin v. Helman*, 123 F.3d 429 (7th Cir. 1997). In that case, the petitioner argued that the parole commission had miscalculated his mandatory release date. The Seventh Circuit believed that challenges to the denial of parole did not affect the validity of a criminal sentence and that such litigation could not be deemed a "functional continuation of the criminal prosecution." Although it conceded that parole affects the duration of confinement, the Court likened the petitioner's challenge to his parole calculation to a challenge to the revocation of good time credits, which, in a previous opinion,

8

it had stated in dicta was a "civil action" for the purposes of the PLRA.

Very recently, the District of Columbia Circuit issued a persuasive opinion aligning itself with the Tenth Circuit and rejecting the analysis of the Seventh Circuit. *Blair-Bey v. Quick,* __ F.3d __ 1998 WL 412488 (D.C.Cir. July 24, 1998). The District of Columbia Circuit took issue with the purported distinction the Seventh Circuit had attempted to draw between "criminal" and "civil" habeas petitions, stating that there was no authority for the proposition, and thus, "[t]here is no evidence that Congress might have relied on a preexisting distinction between "criminal" and "civil" habeas corpus petitions when it enacted the PLRA. Nor is there any indication that Congress itself intended to establish any such distinction in the PLRA." *Id.* at *4-5.[9]

We agree. In fact, the legislative history of the PLRA indicates that Congress was interested in discouraging suits involving frivolous challenges to prison conditions. *See e.g., United States v. Simmonds*, 111 F.3d 737, 743 (10th Cir. 1997) (referencing Senator Dole's statement in regard to limiting such prison condition suits involving a challenge to the amount of storage space and the now infamous creamy peanut butter versus chunky peanut butter controversy).[10] Further, as we recognized in

---

[9] Additionally, "the PLRA contains several other provisions directed specifically at prison conditions litigation . . . but makes no specific reference anywhere in the Act to challenges to the fact or length of confinement." *Blair-Bey* at *5.

[10] 141 Cong. Rec. S7498-01, S7524 (daily ed. May 25, 1995).

*Carson,* the AEDPA, which became effective two days prior to the PLRA, set forth separate procedures for addressing abuses of the habeas process, strongly suggesting that Congress never intended for the PLRA to apply to habeas petitions. 112 F.3d at 820.

Our case law indicates that claims regarding denial of parole (and loss of good time credits) sound in habeas. We have explained that although a § 1983 suit can be used to challenge unconstitutional parole procedures, when a prisoner challenges the result of a specific defective parole hearing or the board's rules and procedures that affect his release, and resolution would automatically entitle him to accelerated release, then the challenge must be pursued in a habeas corpus proceeding. *Orellana v. Kyle,* 65 F.3d 29 (5th Cir. 1995); *see also In re: Cain*, 137 F.3d 234 (5th Cir. 1998) (holding that a prisoner should seek redress for loss of good conduct credits through a habeas proceeding).

Here, the bottom line is that Davis seeks accelerated release from prison. Davis's challenge to the execution of his sentence therefore most certainly is a challenge to the duration of his confinement--not to a condition of his confinement. As such, his claim sounds in habeas, specifically, a section 2241 proceeding. Although claims brought under section 2241 do not challenge the validity of a conviction or sentence because the error complained of did not occur during the criminal proceedings, we believe such claims are more akin to claims brought pursuant to sections 2254 and 2255 than they are to claims challenging conditions of a prisoner's confinement brought in civil rights suits under 42

10

U.S.C. section 1983. Simply put, habeas claims involve someone's liberty, rather than mere civil liability. *Cf. O'Neal v. McAninch,* 115 S.Ct. 992, 996 (1995) (comparing the stakes involved in habeas proceedings to those in civil cases in the context of discussing the standard of review in a habeas case).

In short, because the alleged error affects the duration of confinement, a section 2241 claim is more closely related to other habeas claims brought pursuant to sections 2254 and 2255 than claims challenging conditions of confinement. We see no reason to distinguish a section 2241 proceeding from the other types of habeas proceedings. Accordingly, agreeing with the Tenth and District of Columbia Circuits, we hold that because the nature of a section 2241 proceeding is the same as those under sections 2254 and 2255, section 2241 proceedings are not "civil actions" for the purposes of section 1915. The PLRA thus does not apply to section 2241 proceedings.

### C. ABUSE OF THE WRIT

As set forth above, Davis is attempting to raise the same grounds for relief that he raised in his second section 2241 petition, which was deemed an abuse of the writ. In his brief, he does not specifically argue that the district court erred in holding that he had abused the writ. His sole argument is that the court erred in construing the petition as a habeas petition. Under these circumstances, we need not determine whether the gate-keeping provisions of the AEDPA apply to the instant petition, Davis's third section 2241 petition, because it clearly constitutes an

11

abuse of the writ either under our pre- or post-AEDPA jurisprudence.

In conclusion, we find that the PLRA does not apply and that Davis's third section 2241 petition constitutes an abuse of the writ. We therefore DENY his motion to proceed without prepayment of filing fees and DISMISS the appeal as an abuse of the writ.