In Matter of Application of Prison Litigation
Reform Act in State ex rel. Jason J. Cramer v. David
H. Schwarz:
State of Wisconsin ex rel. Jason J. Cramer,
Petitioner,†

v.

Wisconsin Court of Appeals, Respondent.

Supreme Court

No. 99–1089–OA. Oral argument February 9, 2000.—Decided
July 7, 2000.

(Original action.)

2000 WI 86

(Also reported in 613 N.W.2d 591.)

†Motion for reconsideration denied September 14, 2000.

For the petitioner there were briefs by *Joseph N. Ehmann, Brian C. Findley* and *William J. Tyroler*, assistant state public defenders, and oral argument by *Brian C. Findley*.

For the respondent the cause was argued by *Corey F. Finkelmeyer*, assistant attorney general, with whom on the brief was *James E. Doyle*, attorney general, and *David C. Rice*, assistant attorney general.

An amicus curiae brief was filed and there was oral argument by *Eric J. Callisto,* assistant attorney general, for the State of Wisconsin.

¶ 1. DAVID T. PROSSER, J. This is an original action to determine whether the Wisconsin Prisoner Litigation Reform Act (PLRA), created by 1997 Wis. Act 133,[1] applies to persons seeking certiorari review of probation revocation. Jason J. Cramer (Cramer) pursued certiorari review of a decision of the Division of Hearings and Appeals. He filed a complete petition 81 days after the division revoked his probation on a withheld sentence. The Circuit Court for Dane County, Stuart A. Schwartz, Judge, dismissed the petition, finding that Cramer had not complied with the 45-day filing deadline that Wis. Stat. § 893.735(2) (1997–98)[2] imposes upon persons subject to the PLRA.

¶ 2. The applicability of the PLRA depends upon whether the prospective litigant is a prisoner. Cramer

---

[1] The PLRA took effect on September 1, 1998.

[2] All subsequent references to the Wisconsin Statutes are to the 1997–98 volumes unless indicated otherwise.

maintains he is not a prisoner within the meaning of the PLRA, and he asks that his petition be reinstated under the six-month deadline for filing common-law writs of certiorari.

¶ 3. The issue is whether a person challenging the revocation of probation on a withheld sentence is a "prisoner" who must satisfy PLRA filing requirements. We hold that a petitioner who pursues relief from a probation revocation by a writ of certiorari is a prisoner subject to the PLRA. Writs of certiorari that seek to overturn a revocation of probation are civil actions and are not analogous to criminal appeals that challenge a judgment of conviction or sentence. We conclude that Cramer's writ of certiorari therefore should have been filed within the 45-day deadline established by Wis. Stat. § 893.735(2). We therefore deny his petition for declaratory relief.

¶ 4. The State of Wisconsin has filed a nonparty brief in this case asking the court to determine whether the PLRA applies to prisoners confined outside the state. We decline to address that issue here for two reasons. First, Cramer was not housed in an out-of-state facility. We conclude that a decision of this far-reaching impact is better postponed for a different case, in which the factual circumstances are more compelling and all parties have briefed the matter.[3] Second, the court of appeals recently examined the issue in two cases.[4] We hesitate to disturb those decisions absent a direct appeal to this court.

---

[3] The Respondent in this case, the Wisconsin Court of Appeals, chose not to address the issue because the question was pending before the court in another case.

[4] *State ex rel. Frohwirth v. Wisconsin Parole Comm'n*, 2000 WI App 139, 237 Wis. 2d 627, 614 N.W.2d 541; *State ex rel. Speener v. Gudmanson*, 2000 WI App 78, 234 Wis. 2d 461, 610

## FACTS AND PROCEDURAL HISTORY

¶ 5. The record before the court is sparse because this case comes to us as an original action. Consequently, we derive the operative facts from the stipulation entered by the parties and from the decisions and orders issued below.[5]

¶ 6. On April 8, 1998, Cramer was convicted in Dane County Circuit Court of Physical Abuse of a Child, Battery, Bail Jumping, and Disorderly Conduct. The court withheld the sentences on these convictions and placed Cramer on probation for concurrent three-year terms.

¶ 7. On April 20, 12 days after these convictions, Cramer was arrested on new charges. Probation revocation proceedings were initiated, and the final revocation hearing was held before an Administrative Law Judge (ALJ) on August 31. The ALJ issued a decision on September 9, revoking Cramer's probation on all counts. Cramer qualified for, and was represented by, counsel from the Office of the State Public Defender at the revocation hearing and at subsequent proceedings.

¶ 8. Cramer pursued an administrative appeal before the Division of Hearings and Appeals. On September 28 the division sustained the order of revocation.

¶ 9. On November 10 Cramer filed a petition for writ of certiorari with the Dane County Clerk of Circuit Court, seeking review of the order of revocation. The office of the clerk refused to accept the petition because

---

N.W.2d 136. Both cases hold that the PLRA does not apply to out-of-state prisoners.

[5] The parties incorporated the decisions and orders from the previous proceedings by reference into their stipulation of facts.

477

it did not meet statutory and procedural filing requirements.[6] The clerk returned the filing to Cramer's public defender on November 13, indicating that the petition lacked the paperwork required by the PLRA. The public defender received this notification by mail on November 17. One month later, on December 18, Cramer's public defender resubmitted the petition with the necessary PLRA documentation.

¶ 10. The circuit court entered an order dismissing the action because Cramer had violated the statutory 45-day PLRA filing deadline. Cramer did not argue, and the circuit court did not address, whether he was a prisoner within the meaning of the PLRA. Rather, the court found that under Wis. Stat. § 893.735(2), a statute created by the PLRA, "[a]n action seeking a remedy available by certiorari made on behalf of a prisoner is barred unless commenced within 45 days" of the date of the decision of the Division of Hearings and Appeals. The court calculated that because the Division of Hearings and Appeals issued its determination on September 28, the 45-day period tolled on November 12. The court reasoned that

---

[6] The Dane County Clerk of Circuit Court did not accept the Petition for Writ of Certiorari because: (1) the caption included no case classification code number; (2) the petition included only the original set of papers, not the original and one set of copies for each defendant as required; (3) Cramer had not provided the "Prisoner's Petition/Affidavit Form;" (4) Cramer did not include a certification from the Department of Justice regarding the number of dismissals under Wis. Stat. § 801.02(7)(d); (5) Cramer did not submit a certified copy of the prison trust fund account statement; and (6) Cramer did not provide a copy of his authorization to forward payments from the prison trust fund account to the clerk of court. Had Cramer's petition been in order, it would have been timely.

allowing Cramer to proceed in effect would grant prospective litigants a de facto extension by permitting them to file insufficient pleadings and to resubmit the required documentation later, as they "saw fit."

¶ 11. On February 18, 1999, Cramer filed a motion for reconsideration, arguing in part that a litigant seeking review of probation revocation is not a prisoner under the PLRA, and therefore the 45-day time filing limit does not apply to him. The statutory definition of "prisoner" as it applies to the PLRA appears in Wis. Stat. § 801.02(7)(a)2 and excludes "[a] person bringing an action seeking relief from a judgment of conviction or a sentence of a court, including an action for an extraordinary writ or a supervisory writ seeking relief from a judgment of conviction or a sentence of a court." Wis. Stat. § 801.02(7)(a)2.c.

¶ 12. Cramer maintained that he satisfied the exception to the definition of "prisoner" because the revocation of his probation had the effect of returning him to the court for sentencing. The court disagreed, finding that Cramer was not excluded from the definition because he was not seeking relief from a judgment of conviction or a sentence. The court relied on *State ex rel. Flowers v. H&SS*, 81 Wis. 2d 376, 384, 260 N.W.2d 727 (1978), to conclude that revocation proceedings cannot be analogized to a judgment of conviction or a sentence imposed by a court. The court therefore held that Cramer was subject to PLRA filing requirements and on March 1, 1999, denied his motion to reconsider.

¶ 13. Cramer filed a notice of appeal, seeking review of the dismissals of both his petition and the motion to reconsider. The court of appeals did not receive the filing fee that Wis. Stat. § 809.25(2) requires for filing a notice of appeal and on April 28 issued an order stating that the action would be dis-

missed if the fee were not received within five days. Cramer asked the court of appeals to stay the order. On May 6 the court granted the stay, in part because Cramer also had filed a petition to this court for an original action for declaratory judgment.

¶ 14. The court of appeals previously had held that a revoked probationer seeking review by writ of habeas corpus must comply with the PLRA and pay filing fees. *State ex rel. Marth v. Smith*, 224 Wis. 2d 578, 592 N.W.2d 307 (Ct. App. 1999) (per curiam). The court suggested that under that precedent, Cramer might be a prisoner required to satisfy PLRA filing procedures. If Cramer were not a prisoner, however, a request for waiver of the filing fee would be handled like other fee waiver requests by non-prisoners, subject to the procedure established by Wis. Stat. § 814.29(1)(d)2 for indigent litigants.

¶ 15. On May 13, 1999, while Cramer awaited this court's decision about his petition for original action, he was sentenced in Dane County Circuit Court. He received eight months for the Bail Jumping charge and 90 days concurrent for the Disorderly Conduct charge. Because Cramer had 199 days sentence credit and statutory good time, both of these sentences were deemed served. He also was sentenced to 10 months, to run consecutive with the other sentences, for the Child Abuse charge, and another nine months, concurrent, for the Battery charge. These latter two sentences, however, were stayed for acceptance and participation in a Treatment Alternative Program. Cramer was accepted into the program on June 10 with an anticipated completion date of December 10, 1999.

¶ 16. This court granted the petition for the original action on September 28, 1999, and assumed jurisdiction over the matter. On October 5 the court of

appeals placed Cramer's case on hold pending a decision by this court.

## STANDARD OF REVIEW

¶ 17. This case presents an issue of statutory interpretation. Statutory interpretation is a question of law that this court reviews independently. *State v. Bodoh*, 226 Wis. 2d 718, 724, 595 N.W.2d 330 (1999). This court engages in statutory construction to discern the intent of the legislature. *Kelley Co. v. Marquardt*, 172 Wis. 2d 234, 247, 493 N.W.2d 68 (1992). Our duty to fulfill legislative intent ensures that we uphold the separation of powers by not substituting judicial policy views for the views of the legislature. *See State v. Sample*, 215 Wis. 2d 487, 495, 573 N.W.2d 187 (1998).

¶ 18. The process of statutory interpretation begins with the language of the statute. *Kelley Co.*, 172 Wis. 2d at 247. When a statute unambiguously expresses the intent of the legislature, we apply that meaning without resorting to extrinsic sources. *Reyes v. Greatway Ins. Co.*, 227 Wis. 2d 357, 365, 597 N.W.2d 687 (1999). If a statute is ambiguous, the reviewing court turns to the scope, history, context, and purpose of the statute. *Id.* at 366–67. A statute is ambiguous if reasonably well informed persons can understand it in more than one way. *Kryshak v. Strigel*, 208 Wis. 2d 1, 8, 559 N.W.2d 256 (1997). This court attempts to resolve any ambiguities in a manner that advances the legislature's purpose in enacting the statute. *State v. Corey J.G.*, 215 Wis. 2d 395, 412, 572 N.W.2d 845 (1998).

## ANALYSIS

¶ 19. We begin by noting that the issue, whether Cramer is a prisoner subject to the PLRA, in all probability is moot because Cramer was scheduled to be discharged from his sentences on December 10, 1999. Nonetheless, both Cramer and the Respondent, the Wisconsin Court of Appeals, ask the court to address the merits of the case. We agree to do so here because the situation in question is likely to occur with such frequency that a decision from this court will guide the circuit courts and alleviate uncertainty. *State v. Gray*, 225 Wis. 2d 39, 66, 590 N.W.2d 918 (1999).

¶ 20. The PLRA establishes the procedural requirements that prisoners must satisfy when filing certain types of actions. The legislature has dispersed these requirements throughout a number of statutory sections that comprise the PLRA. 1997 Wis. Act 133. Generally, the PLRA statutes impose conditions that curtail a prisoner's ability to initiate civil lawsuits.[7]

---

[7] There are several ramifications if one is subject to the requirements of the PLRA. For instance, Wis. Stat. § 814.29(1m)(d) requires prisoners with money in their prison trust accounts to use those funds to satisfy the filing fee necessary to initiate a civil action. *See Spence v. Cooke*, 222 Wis. 2d 530, 534, 587 N.W.2d 904 (Ct. App. 1998). By contrast, any person who is not a prisoner may commence an appeal under the provisions of Wis. Stat. § 814.29(1) without the payment of a filing fee if the person is found indigent. *See State ex rel. Speener*, 2000 WI App 78 at ¶ 7. Section 801.02(7)(d) provides that, absent imminent danger, a prisoner's action will be dismissed if the prisoner seeking a waiver of costs and fees has filed three previous frivolous or improper actions or appeals. *State ex rel. Coleman v. Sullivan*, 229 Wis. 2d 804, 601 N.W.2d 335 (Ct. App. 1999). If the court finds that a prisoner's challenge is frivolous or improper, the court may dismiss the action with-

¶ 21. Among these statutory provisions is Wis. Stat. § 893.735(2), which provides that "[a]n action seeking a remedy available by certiorari made on behalf of a prisoner is barred unless commenced within 45 days after the cause of action accrues." Cramer contends that he is not subject to this 45-day deadline because the PLRA does not apply to him. He therefore maintains that his petition is governed by the six-month time limitation for filing common-law writs of certiorari. *See State ex rel. Czapiewski v. Milwaukee City Serv. Comm'n*, 54 Wis. 2d 535, 539, 196 N.W.2d 742 (1972); *see also State ex rel. Johnson v. Cady*, 50 Wis. 2d 540, 549–50, 185 N.W.2d 306 (1971) (petitioners seeking review of probation revocation have right to certiorari review).

¶ 22. The PLRA applies only to those litigants who are prisoners under the definition set forth in Wis. Stat. § 801.02(7)(a)2:

> "Prisoner" means any person who is incarcerated, imprisoned or otherwise detained in a correctional institution or who is arrested or otherwise detained by a law enforcement officer. "Prisoner" does not include any of the following:

---

out requiring an answer. Wis. Stat. § 802.05(3). Similarly, Wis. Stat. §§ 302.11(1q)(a), 302.43, and 807.15 provide that if the court finds that a prisoner's action was malicious or filed to harass the opposing party, or that the prisoner testified falsely or submitted false evidence or information, then the court may order the Department of Corrections to extend the prisoner's mandatory release date or order the sheriff to forfeit the prisoner's good time. In addition, the PLRA requires prisoners to exhaust administrative remedies before seeking judicial review. *See State ex rel. Ledford v. Circuit Court for Dane County*, 228 Wis. 2d 768, 599 N.W.2d 45 (Ct. App. 1999).

a. A person committed under ch. 980.

b. A person bringing an action seeking relief from a judgment terminating parental rights.

c. A person bringing an action seeking relief from a judgment of conviction or a sentence of a court, including an action for an extraordinary writ or a supervisory writ seeking relief from a judgment of conviction or a sentence of a court or an action under s. 809.30, 809.40, 973.19, or 974.06.

d. A person bringing an action under s. 809.50 seeking relief from an order or judgment not appealable as of right that was entered in a proceeding under ch. 980 or in a case specified under s. 809.30 or 809.40.

e. A person who is not serving a sentence for the conviction of a crime but who is detained, admitted or committed under ch. 51 or 55 or s. 971.14(2) or (5).

Cramer contends that he satisfies the exception articulated in Wis. Stat. § 801.02(7)(a)2.c because a probation revocation is equivalent to a judgment of conviction or a sentence.

¶ 23. We must determine whether Cramer, a litigant seeking certiorari review of the revocation of probation on a withheld sentence, is a "prisoner" subject to the PLRA. Cramer argues that he is bringing an action for extraordinary relief from a judgment of conviction or sentence. Whether Cramer is a prisoner therefore hinges on whether a writ of certiorari challenging a probation revocation is the same as "relief from a judgment of conviction or a sentence of a court."

¶ 24. We conclude that the words "relief from a judgment of conviction or a sentence of a court," as used in Wis. Stat. § 801.02(7)(a)2.c, are unambiguous. The

language of the statute reveals that the legislature did not intend to analogize probation revocation with a judgment of conviction or sentence. Consequently, § 801.02(7)(a)2.c does not exclude Cramer from the definition of "prisoner," and he is subject to the filing requirements of the PLRA.

¶ 25. The first step in statutory interpretation is to begin with the language of the statute itself. *Juneau County v. Courthouse Employees*, 221 Wis. 2d 630, 641, 585 N.W.2d 587 (1998). If the statutory language clearly reveals the legislative intent, it is our duty to apply that intent and not look beyond the plain meaning of the statute. *Kelley Co.*, 172 Wis. 2d at 247. Usually, if a statute is unambiguous, this court does not turn to extrinsic evidence to ascertain legislative intent. *Reyes*, 227 Wis. 2d at 365.

¶ 26. In this case, Cramer and the Wisconsin Court of Appeals both find the plain meaning of Wis. Stat. § 801.02(7)(a)2.c unambiguous. We agree. In enacting Wis. Stat. § 801.02(7)(a)2.a–e, the legislature plainly intended to shield certain enumerated litigants from PLRA requirements. But § 801.02(7)(a)2 does not list persons seeking certiorari relief from probation revocations among its enumerated exceptions to the definition of "prisoner." If the legislature had intended to except persons challenging revocation by a writ of certiorari, it could have done so expressly. *See Meyer v. School Dist. of Colby*, 226 Wis. 2d 704, 713, 595 N.W.2d 339 (1999).

¶ 27. It is a well established principle that probation revocation is a civil determination distinct from the underlying criminal proceeding that ends in a judgment of conviction and sentence. *State ex rel. Flowers*, 81 Wis. 2d at 384; *State ex rel. Marth*, 224 Wis. 2d at

583. After a defendant is convicted and sentenced, or placed on probation, the adversarial process has essentially concluded. *State v. Horn*, 226 Wis. 2d 637, 650–51, 594 N.W.2d 772 (1999). Timely post-conviction motions and appeals attacking the judgment of conviction or the sentence reactivate the criminal proceeding.

¶ 28. A petitioner challenging a probation revocation, by contrast, seeks relief from a proceeding distinct from the criminal process. A probation revocation is the product of an administrative, civil proceeding that occurs after the adversarial criminal prosecution has ceased. *Id.* at 650. The mechanism for challenging a probation revocation is a writ of certiorari that asks a circuit court to review the administrative decision. *Id.* at 652; *State ex rel. Warren v. Schwarz*, 211 Wis. 2d 710, 717, 566 N.W.2d 173 (1997). The challenge does not intersect with the continuation of the criminal proceedings, and it does not undermine the decision of the circuit court that convicted or sentenced the defendant. A revocation decision implicates wide-ranging, intangible factors that are irrelevant to the criminal prosecution. *State ex rel. Flowers*, 81 Wis. 2d at 385. A writ of certiorari seeking relief from the revocation of probation strikes at the correctness of the civil decision[8] and does not constitute a collateral attack on the criminal conviction

---

[8] Certiorari review of probation revocation consists of four inquiries: (1) whether the tribunal stayed within its jurisdiction; (2) whether it acted according to law; (3) whether its action was arbitrary, oppressive, or unreasonable and represented its will, not its judgment; and (4) whether the evidence was such that it might reasonably make the decision that it did. *State v. Horn*, 226 Wis. 2d 637, 652, 594 N.W.2d 772 (1999) (citing *State ex rel. Warren v. Schwarz*, 211 Wis. 2d 710, 717, 566 N.W.2d 173 (1997)).

or the sentence. These criminal determinations may be attacked in other ways.

¶ 29. Moreover, the consequences of a successful challenge of a judgment of conviction or sentence and the successful challenge of a probation revocation are patently different. An appeal or writ seeking relief from a judgment of conviction or sentence implicates the core liberty interest of the defendant. A successful challenge to a probation revocation, however, does not disturb the conviction or sentence; it only reinstates the probation initially imposed. *Id.* at 385–86; *see also State ex rel. Johnson,* 50 Wis. 2d at 547–48 (recognizing that probationers legally are in custody although not confined in a penal institution). Litigants seeking to overturn a probation revocation do not seek relief from the sentence. Instead, they pursue a return to probation.

¶ 30. The distinction that we draw between the original criminal prosecution and the subsequent civil action was recognized by the court of appeals in two *per curiam* decisions. In *State ex rel. Marth,* 224 Wis. 2d 578, the court interpreted a pro se habeas petition as a petition for certiorari review of Marth's probation revocation. *Id.* at 583. Turning to a decision from the Court of Appeals for the Seventh Circuit, the court explained that "[c]omplaints about denial of parole, revocation of parole, and the like, do not affect the validity of the criminal sentence, and this litigation therefore cannot be called a functional continuation of the criminal prosecution." *Id.* at 582–83 (quoting *Newlin v. Helman,* 123 F.3d 429 (7th Cir. 1997), *rev'd, Lee v. Clinton,* 209 F.2d 1025 (7th Cir. 2000)). The court concluded that probation revocations are distinct from underlying criminal proceedings and therefore constitute an independent civil action. *Id.* at 583.

¶ 31. In *State ex rel. Stinson v. Morgan*, 226 Wis. 2d 100, 593 N.W.2d 924 (Ct. App. 1999) (per curiam), the prisoner challenged the computation of his period of incarceration after his parole was revoked, claiming that he sought relief from a judgment of conviction or sentence of the court. *Id.* at 102–03. The court of appeals relied on *Marth* and made its decision on the substantive contours of the PLRA. *Id.* Like *Marth*, the *Stinson* court held that the litigant was a prisoner subject to PLRA requirements. Noting that the computation of the period of incarceration was determined after parole had been revoked, the court concluded that the relief sought would not affect the validity of the criminal sentence, and it was not a continuation of the criminal prosecution. *Id.* at 103–04. Rather, it was a challenge to the implementation of a valid sentence.

¶ 32. Equipped with an understanding of these distinctions, a reasonably well informed person would conclude that the revocation of probation is not synonymous with a judgment of conviction or sentence. Were this court to read relief from "probation revocation" into the plain meaning of "relief from a judgment of conviction or a sentence," we would blur irrevocably the historical lines drawn between the two types of proceedings. More significant, we would insert a broad exception into the statute that the legislature did not explicitly enact. The decision to write an exception into a statute is best reserved for the legislature. *Motola v. LIRC*, 219 Wis. 2d 588, 614, 580 N.W.2d 297 (1998) (Abrahamson, C.J., dissenting).

¶ 33. We find that Wis. Stat. § 801.02(7)(a)2.c contemplates challenges to a conviction or sentence, not attacks on a subsequent civil determination, such as probation revocation. The legislature's decision to

exclude persons seeking relief from a judgment of conviction or sentence preserves the appellate review process and grants prisoners otherwise subject to the limitations of the PLRA traditional access to the judicial system. Analogizing a probation revocation to the judgment of conviction or a sentence of a court would exaggerate this legislative purpose by blending together the original criminal prosecution with a subsequent civil proceeding.

¶ 34. In his brief to this court, Cramer argues that the two forms of relief are not distinguishable because by attempting to overturn the revocation, he sought to vacate the sentence and reinstate probation. We disagree. The purpose of Cramer's writ of certiorari was to challenge the revocation of his probation, the prerequisite to his sentence by the court. Failure to challenge the revocation by writ of certiorari in a timely manner is similar to failure to file an appeal in a timely manner. Relabeling the challenge as an attack on the sentence cannot resurrect what Cramer waived by his failure to meet statutory deadlines. Before the passage of the PLRA, the right to challenge the revocation of probation by a writ of certiorari would have been extinguished at six months. The legislature simply determined that the right to challenge by this writ should be exercised within 45 days.

¶ 35. We hold that a person seeking relief from a probation revocation by a writ of certiorari does not qualify for the exception to the definition of "prisoner" created by § 801.02(7)(a)2.c for persons bringing actions for "relief from a judgment of conviction or sentence." Because the circumstances of Cramer's writ for certiorari review do not fall under this exception, he is a "prisoner" within the meaning of the PLRA.

¶ 36. Having concluded that the Wis. Stat. § 801.02(7)(a)2.c is unambiguous, we next consider Cramer's contention that the legislative history nonetheless illustrates that the PLRA was intended primarily to address frivolous litigation about prison conditions.

¶ 37. The well established tenets of the plain meaning rule preclude courts from resorting to legislative history to uncover ambiguities in a statute otherwise clear on its face. *Kelley Co.*, 172 Wis. 2d at 247. No canon, however, prevents this court from examining legislative history "to reinforce and demonstrate that a statute plain on its face, when viewed historically, is indeed unambiguous." *State v. Martin*, 162 Wis. 2d 883, 897 n.5, 470 N.W.2d 900 (1991); *see also Sample*, 215 Wis. 2d at 508–09 (Abrahamson, C.J., concurring). We better fulfill our duty to effectuate legislative intent by verifying that our understanding of a statute conforms with its history.

¶ 38. The inspiration for passage of the PLRA came from the federal PLRA, which seeks to curtail malicious and frivolous inmate lawsuits about prison conditions. Draft #7, Aug. 9, 1996, to 1997 AB 688. The principal sponsor of 1997 Wis. Act 133, Representative Robert G. Goetsch, issued a statement about the proposed bill, addressing the costs that "nuisance inmate lawsuits" generate for Wisconsin taxpayers. The fiscal estimate similarly explained that the "bill aims to reduce frivolous prisoner lawsuits related to prison or jail conditions." LRB 4463/1, 1997 AB 688.

¶ 39. Although litigation about prison conditions served as the original impetus for passage of 1997 Wis. Act 133, the final version of the bill illustrates that the legislature intended to address the costly problems

caused by prisoner litigation more expansively than the federal law. As passed, the PLRA does not exclusively target lawsuits about confinement conditions. "Confinement conditions" themselves are defined broadly: Under Wis. Stat. § 801.02(7)(a)3, " 'Prison or jail' conditions means any matter related to the conditions of confinement *or to the effects of actions by government officers, employes or agents* on the lives of prisoners" (emphasis added). Similarly, Wis. Stat. § 893.735, the provision establishing the 45-day filing deadline, is not restricted to claims initiated to contest conditions, but rather to any action by a prisoner *contesting a governmental decision.* As enacted, only four provisions of the PLRA expressly are limited to confinement lawsuits.[9]

¶ 40. The history of the legislation also reveals that the PLRA was not designed exclusively to restrict frivolous lawsuits but rather to limit broadly prisoner litigation at taxpayers' expense. In a letter addressing an early draft of 1997 AB 688, Joseph Ehmann, First Assistant State Public Defender, recognized that the Wisconsin legislation is more far-reaching than the federal PLRA: "The federal statute is, I believe, limited to court actions arising from grievances relating to conditions of confinement. Assembly Bill 688 contains no such limitation or any limiting language at all. The bill applies to 'an action' (i.e. *any* action) brought by 'a

---

[9] These include: (1) the requirement that prisoners first exhaust administrative remedies under Wis. Stat. § 801.02(7)(b); (2) a limitation restricting prisoner access to temporary injunctions under Wis. Stat. § 813.02(1)(c); (3) a similar provision addressing "[i]njunctive relief in prison condition cases" under Wis. Stat. § 813.40; and (4) a provision curtailing the ability of prisoners to be awarded costs under Wis. Stat. § 814.25(2)(a).

prisoner.' " Letter of Joseph Ehmann to Criminal Justice and Corrections Committee, Jan. 8, 1998 p. 1.

¶ 41. Revisions to the proposed bill indicate that the legislature intended to exclude certain types of actions from the reach of the PLRA to preserve a distinction between civil and criminal proceedings. An early draft of 1997 AB 688 provided:

> Review by common law writ of certiorari is a prisoner's exclusive remedy for doing any of the following:
>
> 1. Challenging the validity of a decision relating to prisoner discipline, the revocation of probation or the denial or revocation of parole.
>
> 2. Challenging the disposition of a complaint concerning prison or jail conditions, including a complaint concerning a program assignment, institution assignment or security classification, for which there is an adequate administrative remedy.

Dec. 30, 1997 Draft of 1997 AB 688, § 13. Public Defender Ehmann suggested that making certiorari review the exclusive remedy for challenging revocation conflicted with this court's precedent in *State ex rel. Vanderbeke v. Endicott*, 210 Wis. 2d 502, 523, 563 N.W.2d 883 (1997), which held "that habeas corpus was a proper method for [a defendant] to use in challenging. . .probation revocation." Assistant Attorney General Charles D. Hoornstra similarly recommended striking the language to "[a]void creating other difficulties with the criminal law, particularly in the area of habeas corpus." Letter of Charles D. Hoornstra to Hon. Robert Goetsch, Jan. 21, 1998, p. 2. The final version of the PLRA did not include this provision, indicating that the legislature was cautious about intruding into

an area in which criminal defendants have the option of pursuing constitutional avenues.

¶ 42. Most significant, the definition of "prisoner" itself underwent critical revisions during the genesis of the PLRA. An early draft created no exceptions to the meaning of prisoner set forth in Wis. Stat. § 801.02(7)(a)2. Dec. 30, 1997, Draft of 1997 AB 688, § 13. Assistant Attorney General Hoornstra proposed that an exception be added to read, in part: " 'Prisoner' does not include. . .persons bringing an action seeking relief from a judgment of conviction, sentence of a court. . . .Actions seeking relief from a judgment of conviction or sentence of a court include extraordinary writs and supervisory writs seeking relief from a judgment of conviction or sentence of a court." Letter of Charles D. Hoornstra to Hon. Robert Goetsch, Jan. 21, 1998, p. 2.

¶ 43. Hoornstra explained that the purpose of this addition was to "[a]ssure exclusion of the criminal appeals process" from the reach of the PLRA. *Id.* Hoornstra's motive for inserting the language about writs seeking relief from a "judgment of conviction or a sentence of a court" thus distinguishes between the original criminal proceeding, which is protected from the PLRA by the appellate process, and other civil actions, such as certiorari review of probation revocations, that fall under the PLRA.

¶ 44. A January 28, 1998, draft of the legislation modified the definition of prisoner and excluded a "person bringing an action seeking relief from a judgment of conviction or a sentence of a court, including an action for an extraordinary writ or a supervisory writ." Jan. 28, 1998, Draft of 1997 AB 688, § 13. The word "writ" in this version was not modified by "judgment of conviction or a sentence of a court." But Assembly

Amendment 1 to Assembly Substitute Amendment 1, offered on January 29 and adopted on February 11, added that modifying phrase. The insertion of the phrase "judgment of conviction or sentence of a court" suggests that the legislature, like Hoornstra, sought to exclude from the PLRA only those litigants pursuing relief from the conviction or sentence.

¶ 45. Taken together, the legislative history does not support Cramer's theory that a civil action for certiorari review of probation revocation is exempt from the requirements of the PLRA. The extrinsic evidence reinforces our conclusion that Wis. Stat. § 801.02(7)(a)2.c, when viewed on its face and analyzed historically, unambiguously refers to criminal appellants seeking redress from convictions and sentences.

¶ 46. Having examined the legislative history of the Wisconsin PLRA, we turn to Cramer's reliance on decisions from federal courts. We do not find these decisions interpreting federal law controlling with respect to the Wisconsin PLRA.

¶ 47. The federal decisions are distinguishable from the present case for two reasons. First, in the federal system, a writ of habeas corpus is the usual mechanism for contesting revocations. Federal courts generally agree that habeas corpus is a hybrid proceeding that uniquely blends both criminal and civil components. *Davis v. Fechtel*, 150 F.3d 486, 488 (5th Cir. 1998); *McIntosh v. United States Parole Comm'n*, 115 F.3d 809, 811 (10th Cir. 1997); *Blair-Bey v. Quick*, 151 F.3d 1036, 1039 (D.C. Cir. 1998). The decisions upon which Cramer relies all turn on the fact that a habeas petition is not a "civil action." Unlike civil actions, habeas proceedings attack the constitutionality of the underlying criminal prosecution. They represent "an attack by a person in custody upon the

legality of that custody, and. . .the traditional function of the writ is to secure release from illegal custody." *McIntosh*, 115 F.3d at 811 (quoting *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973)).

██

¶ 48. In Wisconsin, by contrast, a writ of certiorari is the common route for reviewing probation revocations, not a habeas writ.[10] *See State ex rel. Reddin v. Galster*, 215 Wis. 2d 179, 183–84, 572 N.W.2d 505 (Ct. App. 1997). Writs of certiorari are civil actions that challenge the decision of an administrative body, not the circuit court. *See Horn*, 226 Wis. 2d at 652. The federal cases arising as habeas proceedings are not persuasive for this case. Cramer's action is purely a civil one. He did not appeal the original criminal proceeding, and he did not attack the legality of custody. Rather, Cramer sought reinstatement of probation.

¶ 49. Second, the federal courts recognize that "[t]here is no evidence that Congress might have relied on a preexisting distinction between 'criminal' and 'civil' habeas corpus petitions when it enacted the PLRA." *Davis*, 150 F.3d at 490 (quoting *Blair-Bey*, 151 F.3d at 1040). The legislative history of the Wisconsin PLRA, on the other hand, suggests that our legislature sculpted a distinction between writs seeking criminal and civil relief. The decision to exclude from the definition of "prisoner" persons pursuing relief from judgments of conviction or sentences was meant to preserve the traditional means to attack convictions and sentences but not to afford unlimited opportunity to

---

[10] "[R]elief under habeas corpus will not be granted where other adequate remedies at law exist." *State ex rel. Reddin v. Galster*, 215 Wis. 2d 179, 184, 572 N.W.2d 505 (Ct. App. 1997) (quoting *State ex rel. Dowe v. Circuit Court for Waukesha County*, 184 Wis. 2d 724, 729, 516 N.W.2d 714 (1994)).

challenge the validity of a civil proceeding. Civil actions, like certiorari review, were not accommodated similarly in the drafting of the PLRA.

¶ 50. Having concluded that Cramer is a prisoner subject to the filing requirements of the PLRA, we find that his petition for certiorari review was not timely filed under the 45-day deadline imposed by Wis. Stat. § 893.735(2).

## CONCLUSION

■

¶ 51. We hold that a petitioner who seeks to overturn the revocation of probation by a writ of certiorari is a "prisoner" within the meaning set forth in Wis. Stat. § 801.02(7)(a)2 and therefore is governed by the provisions created by the PLRA. A probation revocation is not analogous to a judgment of conviction or a sentence, and therefore a writ of certiorari challenging revocation is not subject to the exclusion created by Wis. Stat. § 801.02(7)(a)2.c. We conclude that Cramer's writ of certiorari seeking review of the Division of Hearings and Appeals decision is subject to the 45-day deadline established by Wis. Stat. § 893.735(2). We therefore deny his petition for declaratory relief. We expressly do not address whether the PLRA applies to prisoners situated in out-of-state facilities.

*By the Court.*—Rights declared and relief denied.

¶ 52. ANN WALSH BRADLEY, J. *(dissenting).* The majority declares that litigants seeking to overturn a probation revocation are not really requesting relief from a sentence but rather are merely seeking a return to probation. This is a distinction without a substantive difference. Why do litigants want to return to

probation? The obvious answer is that they seek relief from a sentence.

¶ 53. Yet, the majority elevates form over substance to deny the petitioner his right of access to the courts of this state. Its rigid construction of probation revocations as civil proceedings subject to PLRA ignores the essence of such actions in the present context and also finds little support in the text or purpose of the statute. Rather, these sources reveal that a petitioner challenging probation revocation via a writ of certiorari does not fall under the definition of "prisoner" set forth in Wis. Stat. § 801.02(7)(a)2 and therefore is not subject to PLRA's filing requirements.

¶ 54. Wisconsin Stat. § 801.02(7)(a)2.c provides that for the purposes of PLRA a prisoner does not include "[a] person bringing. . .an action for an extraordinary writ or a supervisory writ seeking relief from a judgment of conviction or a sentence of a court." This statute unambiguously exempts from its ambit writs of certiorari challenging probation revocations. Certiorari represents an extraordinary remedy, *Tobler v. Door County*, 158 Wis. 2d 19, 24, 461 N.W.2d 775 (1990), and challenges to probation revocation seek relief from the sentence that will be imposed upon a sustained revocation.

¶ 55. The majority unconvincingly endeavors to distinguish certiorari challenges to probation revocation by asserting that a petitioner instituting such a challenge does not seek relief from a sentence but rather seeks a reinstatement of probation. Majority op. at ¶ 29. This is a formalistic distinction without a substantive difference.

¶ 56. As a practical matter, the sole reason to challenge a probation revocation is to seek relief from the sentence resulting from that revocation. A success-

ful challenge to the revocation invalidates the sentence and restores probation. In essence, a reinstatement of probation constitutes relief from the sentence that would be imposed upon a sustained revocation. *State v. Balgie*, 76 Wis. 2d 206, 208–09, 251 N.W.2d 36 (1977). Thus, the majority misses the mark in its attempt to create a palpable difference between the words of Wis. Stat. § 801.02(7)(a)2.c and probation revocation proceedings.

¶ 57. Admittedly, by its nature a probation revocation is a civil proceeding. *State v. Horn*, 226 Wis. 2d 637, 651, 594 N.W.2d 772 (1999). As a constitutional matter, it is not a stage of a criminal prosecution. *See State ex rel. Vanderbeke v. Endicott*, 210 Wis. 2d 502, 513, 563 N.W.2d 883 (1997) (citing *Gagnon v. Scarpelli*, 411 U.S. 778, 782 (1973)). However, the label attached to a revocation of probation is a matter of semantics in the present context and obscures the essence of the interests at stake.

¶ 58. Probation revocations implicate a loss of liberty, and thus a probationer is entitled to due process of the law before probation may be revoked. *Vanderbeke*, 210 Wis. 2d at 513–14. *See also Gagnon v. Scarpelli*, 411 U.S. 778, 782 (1973). A probationer's personal liberty "includes many of the core values of unqualified liberty and its termination inflicts a 'grievous loss' on the [probationer] and often on others." *Morrissey v. Brewer*, 408 U.S. 471, 482 (1972).

¶ 59. The United States Supreme Court has recognized that notwithstanding the general line drawn between civil and criminal cases, when a "fundamental interest [is] at stake" the State must provide civil litigants access to its judicial processes without regard to a litigant's ability to comply with filing requirements. *See M.L.B. v. S.L.J.*, 519 U.S. 102, 113 (1996) (court

fees). Because a certiorari challenge to probation revocation implicates the fundamental right of personal liberty, due process is triggered.

¶ 60. Denying a revoked probationer's access to the courts for failing to meet a narrow 45-day filing limit would be antithetical to the guarantees of due process. It is doubtful that the legislature intended to foreclose the probationer's participation in the judicial process simply because a revocation is by nature a civil proceeding.

¶ 61. Indeed, the civil/criminal distinction forged by the majority to support its application of PLRA to probation revocations becomes particularly tenuous when the other exceptions under Wis. Stat. § 801.02(7)(a)2 are examined. *See State v. Williams*, 198 Wis. 2d 516, 527, 544 N.W.2d 406 (1996). PLRA's reach does not extend to persons civilly committed under Wis. Stat. chs. 51, 55, or 980. Wis. Stat. § 801.02(7)(a)2.a, 2.e. The statute also does not apply to a person challenging the termination of parental rights. Wis. Stat. § 801.02(7)(a)2.b.

¶ 62. Both the institutional commitment of persons and the termination of parental rights are by definition civil actions. Yet, the legislature sheltered these civil proceedings from the requirements of PLRA in likely recognition that the requirements may infringe upon the fundamental rights implicated by such proceedings.

¶ 63. The majority's attempt to support the extension of PLRA to probation revocation challenges, which involve fundamental liberty interests, is therefore not compelling in light of the exemption of similar civil proceedings from the scope of PLRA. To the extent that the majority fears excluding certiorari challenges to probation revocations "would blur irrevocably the

historical lines drawn between" civil and criminal proceedings, the majority fails to reconcile the expressed legislative intent to exclude a number of civil actions from the ambit of PLRA. Majority op. at ¶ 32.

¶ 64. PLRA's underlying purpose supports the interpretation that its provisions do not govern probation revocation challenges. As the majority concedes, the primary intent driving the passage of PLRA centered on deterring frivolous prisoner lawsuits relating to conditions of confinement because these civil lawsuits were considered a waste of time and money. *See* Majority op. at ¶ 38. Additionally, the legislature intended to conform the Wisconsin PLRA to the federal PLRA provisions. *See* Background Commentary to 1997 SB 388, Draft #7, p. 2–3, August 9, 1996 (original bill).

¶ 65. However, the majority claims that the Wisconsin PLRA expanded beyond the scope of the federal statute and was "not designed exclusively to restrict frivolous lawsuits, but rather to limit broadly prisoner litigation at taxpayers' expense." Majority op. at ¶ 40. It is perplexing that the majority apparently considers challenges to restriction of liberty tantamount to frivolous lawsuits that impose a heavy tax burden on the constituents of the state. Without justification, the majority raises fiscal and administrative convenience above the core liberty interests at issue in probation revocations.

¶ 66. Several federal courts have determined that the federal PLRA does not encompass habeas revocation challenges. *See Davis v. Fechtel*, 150 F.3d 486, 490 (5th Cir. 1998); *Blair-Bey v. Quick*, 151 F.3d 1036, 1039–40 (D.C. Cir. 1998); *McIntosh v. United States*

*Parole Comm'n*, 115 F.3d 809, 811 (10th Cir. 1997).[1] Although the state PLRA closely tracks the federal statute, the majority undertakes to distinguish these federal cases by emphasizing the label of the revocation challenge rather than examining the essence of the challenge.

¶ 67. The majority dismisses the persuasive authority of the federal cases by maintaining that habeas corpus represents the "usual mechanism for contesting" revocations in federal court, while a writ of certiorari represents the "common route" in Wisconsin. Majority op. at ¶¶ 47–48. The majority offers no cogent explanation as to how these two extraordinary writs differ to any substantive degree when both are issued to challenge revocations. This effort to create a stark disparity between the two writs is inconsistent with Wisconsin precedent recognizing that revocations may be reviewed via habeas corpus as well as through certiorari. *Vanderbeke*, 210 Wis. 2d at 522–23.

¶ 68. Moreover, the majority's reliance earlier in its analysis on the *per curiam* decision in *State ex rel. Marth v. Smith*, 224 Wis. 2d 578, 592 N.W.2d 307 (Ct.

[1] A significant number of federal courts hold that the federal PLRA does not apply to habeas corpus petitions in general. *See Davis v. Fechtel*, 150 F.3d 486, 490 (5th Cir. 1998); *Blair-Bey v. Quick*, 151 F.3d 1036, 1037 (D.C. Cir. 1998); *Kincade v. Sparkman*, 117 F.3d 949, 951 (6th Cir. 1997); *McIntosh v. United States Parole Comm'n*, 115 F.3d 809, 811 (10th Cir. 1997); *United States v. Levi*, 111 F.3d 955, 956 (D.C. Cir. 1997); *Anderson v. Singletary*, 111 F.3d 801, 804–05 (11th Cir. 1997); *Naddi v. Hill*, 106 F.3d 275, 277 (9th Cir. 1997); *Santana v. United States*, 98 F.3d 752, 755–56 (3d Cir. 1996); *Martin v. United States*, 96 F.3d 853, 855 (7th Cir. 1996); *Reyes v. Keane*, 90 F.3d 676, 678 (2d Cir. 1996), *overruled on other grounds, Lindh v. Murphy*, 520 U.S. 320 (1997); *Frazier v. Hesson*, 40 F. Supp. 2d 957, 967 (W.D. Tenn. 1999).

App. 1999), weakens its effort to separate state certiorari proceedings from federal habeas actions. *Marth* involved a Wisconsin probationer who filed a habeas petition claiming errors in his probation revocation proceeding. *Id.* at 581.

¶ 69. In reaching the conclusion that PLRA requirements applied to the probationer's habeas petition because he was a prisoner within the meaning of the statute, the court of appeals relied primarily upon a federal habeas case that applied PLRA's provisions to a habeas parole revocation review. *See Newlin v. Helman*, 123 F.3d 429 (7th Cir. 1997), *overruled on other grounds, Lee v. Clinton*, 209 F.3d 1025, 1026 (7th Cir. 2000). *Newlin* represented the minority view that habeas corpus is strictly a civil proceeding, and the case was subject to oft-cited criticism. *See Davis*, 150 F.3d at 489–90; *Blair-Bey*, 151 F.3d at 1039. By affirming the validity of *Marth*, majority op. at ¶ 30, the majority in turn implicitly validates *Newlin*.

¶ 70. It is ironic that the majority dismisses federal habeas case law that contradicts its interpretation of PLRA by asserting the distinction between writs of habeas corpus and writs of certiorari. Yet when, as in *Newlin*, such federal habeas law supports its statutory interpretation, the majority shelves the distinction between the two writs. To validate a case that relies upon federal habeas law while simultaneously asserting that the federal habeas cases provide no persuasive authority is inconsistent and undercuts the majority's legal analysis.[2]

---

[2] It is also worth noting that the federal PLRA's definition of prisoner is more expansive than the one adopted by the Wisconsin legislature. *See* 28 USC § 1915(h). Yet the federal courts that have interpreted the definition have exempted parole revo-

¶ 71. Although certiorari challenges to probation revocations are civil proceedings by definition, they implicate fundamental liberty interests. A prisoner instituting a certiorari action is thus exempted from PLRA's filing requirements under the words of the statute and in accordance with its underlying purposes. Because the majority emphasizes formalism over substance to hold otherwise, I dissent.

¶ 72. I am authorized to state that SHIRLEY S. ABRAHAMSON, CHIEF JUSTICE, joins this dissenting opinion.

cation from the statute's requirements. *See Davis*, 150 F.3d at 490; *Blair-Bey*, 151 F.3d at 1039–40; *McIntosh*, 115 F.3d at 811.

Because the Wisconsin PLRA excludes a larger class of persons from the reach of PLRA's filing requirements, it is incongruous to conclude that the state statute provides more stringent filing requirements than does the federal statute. Rather, if the expansive definition of prisoner under the federal statute exempts challenges to probation revocations from statutory requirements, it is logical that a more limited definition of prisoner under the Wisconsin PLRA would thereby exclude probation revocation challenges.