Stanley ROSENBLATT, Plaintiff,

v.

UNITED WAY OF GREATER HOUSTON, et al.,
Defendants.

Civil Action No. H–08–1970.

United States District Court,
S.D. Texas,
Houston Division.

Dec. 23, 2008.

Augustus Thorburn White, Attorney at Law, Houston, TX, for Plaintiff.

Matthew Roy Scott, Bell Nunnally & Martin, Dallas, TX, for Defendants.

### MEMORANDUM OPINION AND ORDER

KENNETH M. HOYT, District Judge.

## I. INTRODUCTION

Pending before the Court is the defendants United Way of Greater Houston, United Way of the Texas Gulf Coast Cash Balance Plan, and the Committee of the United Way of the Texas Gulf Coast Cash Balance Plan's, (collectively "United Way" or "defendants"), motions to dismiss for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6). The plaintiff, Stanley Rosenblatt ("Rosenblatt"), submitted a response to these motions. The defendants filed a joint reply to Rosenblatt's response, which he answered with a supplemental response to address the contested issues. Having carefully reviewed the pleadings, the Court hereby GRANTS the motions.

## II. FACTUAL BACKGROUND

For roughly forty years, United Way provided a traditional defined benefit pension plan for employees of its affiliated agencies to participate in order to receive benefits upon retirement.[1] Under a defined

---

1. A "defined benefit plan" is a plan established and maintained by an employer primarily to provide systematically for the payment of definitely determinable benefits to employees over a period of years, usually for life, after retirement. BLACK'S LAW DICTIONARY 445 (8th ed. 2005).

benefit plan, retirement benefits are generally based on a formula that included such factors as years of service and compensation. Under United Way's plan, the plan administrator would calculate a participant's pension benefits by multiplying a percentage of the participant's income by his years of service. By the plan's terms, United Way would be the "Principal Employer" for all matters connected with it.

Rosenblatt joined the staff of the Jewish Community Center ("JCC") on September 9, 1974, at the age of 33, and has continued to work there to this day.[2] As a JCC employee, he became a participant in United Way's pension plan system. Under United Way's plan system, Rosenblatt earned a retirement annuity, which was payable to him after he reached his "normal retirement age" of sixty-five. The amount of his annuity depended on his (a) length of "service," (b) "final average earnings," and (c) the "Social Security Wage Base," as these terms were defined in the plan's documentation and applicable law. Each year, Rosenblatt accrued an increase in his annuity, rather than some particular amount of cash, that would be distributed to him upon retirement.[3]

In May 1995, United Way informed agencies participating in its pension system that the plan had a large funding deficit in which there was substantially less money than it would need to pay the benefits already accrued. United Way issued several statements disclosing that the size of the deficit totaled several millions of dollars.[4] During that time, it considered a number of options to eliminate the funding deficit. Some of the alternatives developed by the defendants after reviewing the dilemma included terminating the plan, converting it into an alternative employee benefit plan, or merging the plan with United Way's Savings Plan.

At the conclusion of its deliberations, United Way converted its traditional defined benefit plan into a cash balance plan ("CB Plan"). Under the CB Plan, each participant's accrued benefit would be treated as a hypothetical cash balance as of a chosen date. After that date, the account balance was increased by an "interest credit"[5] and a "contribution credit"[6] as determined by the CB Plan's formula in accordance with its terms. For participants in the previous plan, the CB Plan provided that their accrued benefits would become the opening balances in

2. Rosenblatt began his employment with JCC exactly one week after the first effective date of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1001–1461.

3. In addition to paying a determinable annuity at retirement, a traditional defined benefit plan possesses two other characteristics. First, there are no individual accounts, as the plan's assets are pooled together into a single trust. The individual participant has no legal interest in any part of the trust assets, and no power to direct how they are invested. As a result, participants do not bear any investment risks in the assets, and the amount of the retirement annuity does not depend on the defined benefit plan's actual investment performance. Second, a traditional defined benefit is funded on an actuarial basis. Each year, an enrolled actuary certifies the amount

of the contribution needed to ensure that the plan will have the cash needed to pay retirement annuities as they become due. This computation requires the actuary to make "actuarial assumptions" about future mortality, wages, investment performance, and service.

4. Rosenblatt alleges in his complaint that the size of the shortfall was originally stated to be $2 million but that, in August 1995, United Way later disclosed that the deficit was over $7 million.

5. "Interest credits" consist of the interest earned on a participant's account balance.

6. "Contribution credits" are a percentage of the participant's salary.

their accounts. The CB Plan went into effect on January 1, 1996, thereby leaving unaffected the benefits Rosenblatt accrued up to December 31, 1995.

Although United Way sought to explain the conversion to employees of its agencies as a way to ease any concerns about it, the CB Plan did not appear to do anything to reduce costs and investment risks made with respect to its assets. Moreover, as Rosenblatt alleges, it also had a greater negative impact on older employees than on younger employees. Rosenblatt contends that, upon further inquiry, he discovered that, according to the CB Plan's calculations, he accrued a retirement annuity of $2833 per month as of the end of 1995 but did not accrue any further benefits. As it did previously, United Way continued to send Rosenblatt a benefits statement informing him that specific amounts of "interest credits" and "contribution credits" were added to his account. However, Rosenblatt alleges that he has not seen any additional accrued benefits included in his account since he last reviewed it.

As adopted in 1995, the CB Plan also provided an early retirement benefit which, in essence, paid the sum of the benefit earned under the traditional defined benefit plan and the subsequent contribution credits. In 2002, United Way amended the CB Plan to create a "wearaway" provision to prevent participants from acquiring new benefits for a period of years after it is changed. Ultimately, United Way's efforts to convert the defined benefit plan into the CB Plan failed to alleviate the deficit it incurred as a result of its investment decisions. In 2004, due to its continued financial deterioration, United Way amended the CB Plan to freeze all accruals currently in the pension system.

Rosenblatt subsequently filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") against United Way, alleging that he was discriminated against because of his age. He claimed that United Way changed the traditional defined benefit plan to improve benefits earned by younger employees at the expense of older employees.[7] Rosenblatt specifically alleged that the CB Plan used employer contributions to the accounts of older employees to pay down the retirement fund's deficit, rather than increasing retirement income.[8] As a result, older employees would make two payments for their retirement: one payment for promised benefits before 1996, and again, to fund benefits they already earned. Moreover, he asserted that the plan was being administered in a way that did not adequately calculate the value of

7. In his complaint before the Court, Rosenblatt alleges that employee age was an important factor in United Way's deliberations about how it would address the problems surrounding its financial deficit. He further contends that other concerns United Way had in addressing this matter included the reduction of actuarial and other expenses, the ability to attract and retain participating agencies, the desire to avoid agency investment risks, establishing a plan understandable by employees, employee morale, and public relations. Rosenblatt's complaint asserts that the latter was an important consideration, not only because United Way depends on its public image to raise funds, but also because a series of scandals involving various national and regional United Way pension funds already threatened their funding.

8. Rosenblatt's complaint before this Court asserts that the effect on older employees' pension benefits was caused by United Way's systematic understatement of the cash value of the 1995 accrued benefits, including (a) miscalculation of the Social Security Wage Base, (b) incorrect application of a pre-retirement mortality assumption, (c) use of an incorrect post-retirement mortality assumption, (d) a series of errors caused by failure to apply the CB Plan's definition of "Prior Plan Account," and a resulting error in the "interest credit" applied to his account.

benefits he and other employees similarly situated earned before 1996. The EEOC issued a notice of right to sue on April 29, 2008, after concluding its investigation on Rosenblatt's claim.

## III. CONTENTIONS OF THE PARTIES

### A. The Defendants' Contentions

United Way argues that Rosenblatt fails to allege specific facts to support his claims under ERISA and the Age Discrimination in Employment Act ("ADEA"). The defendants contend that five circuit courts previously rejected the argument that cash balance plans are *per se* discriminatory against older employees. Thus, ERISA does not provide any relief for Rosenblatt on his claim that the CB Plan discriminated against older employees. Moreover, because he cannot recover on this claim under the applicable ERISA provisions, it follows that he cannot assert a claim under the ADEA provisions that would provide him with a remedy. Furthermore, Rosenblatt's additional claims under ERISA fail because he neglects to allege any facts that would support a cause of action to proceed to trial. The defendants also allege that some of the facts Rosenblatt states contradict any basis for liability he would have under any provisions cited in his complaint. Accordingly, his claims should be dismissed for failure to state claims upon which relief can be granted.

### B. The Plaintiff's Contentions

Rosenblatt asserts that the defendants move for dismissal without properly addressing many of the claims presented in his complaint. He contends that they do not make any effort to address the benefit calculations issues or the age discrimination claims related to them. Rosenblatt also alleges that the line of cases cited by the defendants do not control the issues

presented and thus should not be given significant weight in resolving his claims. He also argues that further discovery is appropriate to determine the scope of the defendants' improper conduct and to allow time for the applicable authority to be settled through appellate review. Moreover, he claims that the factual allegations in his complaint are specific enough to provide him with adequate relief. Accordingly, Rosenblatt asserts that his complaint states causes of action against United Way to preclude dismissal.

## IV. STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) authorizes a defendant to move to dismiss for "failure to state a claim upon which relief may be granted." FED. R. CIV. P. 12(b)(6). Under the demanding strictures of a Rule 12(b)(6) motion, "the plaintiff's complaint is to be construed in a light most favorable to the plaintiff, and the allegations contained therein are to be taken as true." *Oppenheimer v. Prudential Sec., Inc.*, 94 F.3d 189, 194 (5th Cir.1996). In essence, "the district court must examine the complaint to determine whether the allegations provide relief on any possible theory." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir.2001). Under Rule 12(b)(6), a court will dismiss a complaint only if the "[f]actual allegations [are not] enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 1965, 167 L.Ed.2d 929 (2007). To survive a Rule 12(b)(6) motion, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Id.*

## V. ANALYSIS & DISCUSSION

### A. The Cash Balance Plan

Rosenblatt contends that United Way's adoption and administration of the CB

Plan impermissibly discriminates against older employees in violation of ERISA and the ADEA. He specifically alleges that the purpose and effect of the CB Plan discriminates against older employees regarding the distribution of pension benefits they are entitled to receive in comparison to the traditional defined benefit plan he previously participated in. The defendants counter by arguing that neither ERISA nor the ADEA provide Rosenblatt any form of relief for his challenges that the CB Plan is discriminatory. They further assert that his claims are without merit as every circuit court to consider similar challenges to cash balance plans has upheld them as being permissible under ERISA and the ADEA.

### 1. ERISA

ERISA § 204(b)(1)(H)(i) prohibits a defined benefit plan from ceasing an employee's benefit accrual or reducing "the rate of an employee's benefit accrual ... because of the attainment of any age." 29 U.S.C. § 1054(b)(1)(H)(i). Despite their resemblance to defined contribution plans, federal courts have held that cash balance plans are, in essence, defined benefit plans. *Hurlic v. S. Cal. Gas Co.,* 539 F.3d 1024, 1029 (9th Cir.2008); *Berger v. Xerox Corp. Ret. Income Guarantee Plan,* 338 F.3d 755, 757 (7th Cir.2003); *Campbell v. Bank-Boston, N.A.,* 327 F.3d 1, 4 (1st Cir.2003); *Esden v. Bank of Boston,* 229 F.3d 154, 158 (2d Cir.2000); *Lyons v. Georgia—Pacific Corp. Salaried Employees Ret. Plan,* 221 F.3d 1235, 1237 (11th Cir.2000). In his complaint, Rosenblatt argues that the conversion into the CB Plan resulted in a reduction in benefit accruals that had a greater impact on him and other similarly situated older employees. He asserts that miscalculations of interest and contribution credits as well as other systematic understatements of the cash value of his benefits prior to the conversion caused this effect on older employees' benefits. Neither the Supreme Court nor the Fifth Circuit has presented any guidance to resolve this issue. Thus, the Court shall look to federal case law from other jurisdictions that have previously addressed claims similar to Rosenblatt's.

The Seventh Circuit was the first court of appeals to review whether a cash balance plan was discriminatory as a matter of law in violation of ERISA § 204(b)(1)(H)(i). *Cooper v. IBM Pers. Pension Plan,* 457 F.3d 636 (7th Cir.2006). In *Cooper,* the plaintiffs argued that IBM's cash balance plan was discriminatory because younger employees would receive interest credits for more years of service than older employees. 457 F.3d at 638. In furtherance of this contention, they asserted that the term "benefit accrual" referred to what the employee takes upon retirement, regardless of the amount of equal employer credits placed into an account. *Id.* The Seventh Circuit rejected this argument and concluded that the phrase "benefit accrual" as used in the defined benefit plan provision "reads most naturally as a reference to what the employer puts in" the account as opposed to what an employee takes out upon retirement. *Id.* at 639. In comparing the anti-discrimination provisions applicable to defined contribution plans and defined benefit plans, the court reasoned that it would be incongruous to say that any differences in the accumulation of interest on employer contributions made to defined contribution plans are not discriminatory whereas the differences in accumulated interest made to hypothetical cash balances are discriminatory.[9] *Id.* Furthermore, the Seventh Circuit held that the computation

---

**9.** The applicable anti-discrimination provision for defined contribution plan states that "[a] defined contribution plan satisfies the requirements of this paragraph if, under the plan, allocations to the employee's account are not ceased, and the rate at which amounts are allocated to the employee's account is not reduced, because of the attainment of any age." 29 U.S.C. 1054(b)(2)(A). In compar-

of interest in both situations is not indicative of age discrimination as nothing "suggests that Congress set out to legislate against the fact that younger workers have (statistically) more time left before retirement, and thus a greater opportunity to earn interest on each year's retirement savings." *Id.* (citing *Hazen Paper Co. v. Biggins,* 507 U.S. 604, 611, 113 S.Ct. 1701, 123 L.Ed.2d 338 (1993)).

Four circuit courts addressing this issue adopted the rule in *Cooper* that cash balance pensions plans do not discriminate based on age in violation of ERISA § 204(b)(1)(H). *Hurlic,* 539 F.3d at 1029; *Hirt v. Equitable Ret. Plan for Employees, Managers and Agents,* 533 F.3d 102 (2d Cir.2008); *Register v. PNC Fin. Servs. Group, Inc.,* 477 F.3d 56 (3d Cir.2007); *Drutis v. Rand McNally & Co.,* 499 F.3d 608 (6th Cir.2007). In *Hurlic,* the Ninth Circuit rejected the plaintiffs' argument that sought to equate the term "accrued benefit" [10] with the "rate of an employee's benefit accrual" language found in ERISA § 204(b)(1)(H)(i). 539 F.3d at 1030. Relying on congressional intent, the court concluded that the language in section 204 referring to an employee's benefit accrual pertained only to the rate at which a participant's benefits increase rather than the participant's total accrued benefit. *Id.*; *see also Lockheed Corp. v. Spink,* 517 U.S. 882, 897, 116 S.Ct. 1783, 135 L.Ed.2d 153 (1996) ("A reduction in total benefits due is not the same thing as a reduction in the rate of benefit accrual; the former is the final outcome of the calculation, whereas the latter is one of the factors in the equation."). A contrary reading of the statute, the court reasoned, would create an absurd result. *Hurlic,* 539 F.3d at 1032.

The Court agrees with the holdings of the five circuit courts previously addressing this issue and concludes that United Way's CB Plan is not inherently age discriminatory under the terms of ERISA § 204(b)(1)(H)(i). When interpreting a statute, a court must first look to its plain language. *Davis v. Fechtel,* 150 F.3d 486, 488 (5th Cir.1998). "Specific words within a statute, however, may not be read in isolation of the remainder of that section or the entire statutory scheme." *Id.* (quoting *Sutton v. United States,* 819 F.2d 1289, 1294 (5th Cir.1987)). It is a fundamental principle of statutory construction that "[w]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." *Russello v. United States,* 464 U.S. 16, 23, 104 S.Ct. 296, 78 L.Ed.2d 17 (1983). "Statutes should be interpreted to avoid untenable distinctions and unreasonable results whenever possible." *Am. Tobacco Co. v. Patterson,* 456 U.S. 63, 71, 102 S.Ct. 1534, 71 L.Ed.2d 748 (1982).

Throughout his complaint, Rosenblatt seems to suggest that his use of the term "benefit accrual" is in some way similar to the term "accrued benefit." However, a reading of the applicable provisions leads to the conclusion that these terms cannot be used interchangeably. Section 204(b)(1)(H)(i) provides that a defined benefit plan is impermissibly age discriminatory if "an employee's benefit accrual is

---

ing this provision with ERISA § 204(b)(1)(H)(i), the Seventh Circuit found that they both proscribed the same conduct despite the fact that the rule for defined benefit plans indicates what is prohibited while the rule for defined contribution plans indicates what is permitted. *Cooper,* 457 F.3d at 639.

10. ERISA defines a participant's "accrued benefit" as "the individual's accrued benefit determined under the plan and . . . expressed in the form of an annual benefit commencing at normal retirement age." 29 U.S.C. § 1002(23)(A).

ceased because of the attainment of any age." 29 U.S.C. § 1054(b)(1)(H)(i). This provision would fail to carry out Congress' intent if the terms were to be interpreted similarly given that an accrued benefit is the property of the participant and not the employer. ERISA strictly prohibits the reduction of a plan participant's accrued benefits. *Id.* § 1054(b)(1)(G).

Nowhere in Rosenblatt's complaint does he allege that older participants actually receive lower contribution and interest credits under the CB Plan than younger participants. Instead, his complaint squarely centers on the claim that, subsequent to the conversion, the benefits he would be entitled to were not properly calculated by the defendants. Moreover, the CB Plan's terms reveal that the credits a participant earns will accrue at an equal rate with the only difference being that, based on the time value of money, a younger participant's total accrued benefit at retirement will be greater than an older participant given that the former has more time before retirement to compound more interest than the latter. Rosenblatt does not reference any provision in the CB Plan that, in any way, suggests that a participant's rate of benefit accrual is reduced due to the attainment of any age. A party must present specific facts and not mere conclusory allegations in order to avoid dismissal for failure to state a claim. *Kane Enters. v. MacGregor (USA) Inc.*, 322 F.3d 371, 374 (5th Cir.2003). Thus, Rosenblatt cannot set forth any facts on which he would be entitled to relief.

In his supplemental response, Rosenblatt contends that the defendants miscon-strue the applicable provisions in section 204 and that his complaint only challenges the reduction of his accrued benefits. He cites ERISA § 204(b)(1)(G)(i) and subsection (g) to further his argument that he does not challenge the rate of benefit accruals as United Way argues. Section 204(b)(1)(G)(i) prohibits a reduction of a participant's accrued benefits because of age or service. 29 U.S.C. § 1054(b)(1)(G). Subsection (g) precludes a plan administrator from amending a plan in a manner that would reduce a participant's accrued benefits, regardless of whether or not it was motivated by age. *Id.* § 1054(g).

A review of Rosenblatt's complaint draws the conclusion that his claims rest on challenges to benefit accruals and not accrued benefits. Nowhere in his complaint does Rosenblatt use the term "accrued benefits" to assert that United Way violated any of the ERISA provisions cited. Instead, in the "Claims" section of his complaint, he states that there were changes in his "benefit accruals" and that the defendants failed to "accrue benefits" as required by ERISA. Moreover, in his factual allegations, Rosenblatt contends that the defendants miscalculate his benefits and not that the benefits he attained under the traditional defined benefit plan were reduced as a result of the conversion into the CB Plan. Thus, it cannot be said that his complaint alleged claims for relief under any of these subsections related to the reduction of accrued benefits. Accordingly, the Court finds that Rosenblatt cannot establish a claim for relief that the CB Plan is in violation of ERISA.[11]

11. The Court rejects Rosenblatt's argument that his claims addressed the same issues presented in *Humphrey v. United Way of the Texas Gulf Coast*, 590 F.Supp.2d 837, 2008 WL 5401546 (S.D.Tex. Mar. 28, 2008). In *Humphrey*, the issue was whether early retirees were entitled to benefits under the original defined benefit plan and the new cash balance plan developed by United Way. The Court held that employees eligible for early retirement were entitled to receive benefits under both plans as opposed to only the original defined benefit plan. *Humphrey*, 590 F.Supp.2d at 849. Because Rosenblatt concedes that he is still employed at JCC beyond his normal retirement age and his complaint

## 2. ADEA

United Way contends that Rosenblatt cannot recover under the broader provision of the ADEA because the Act contains a specific provision that applies to discrimination claims based on an employee's pension plan. Moreover, the defendants argue that because the CB Plan does not violate ERISA § 204(b)(1)(H)(i), which contains similar language to the applicable ADEA provision, it follows that it does not violate the ADEA. Rosenblatt counters by alleging that the ADEA contains several provisions that permit him to assert claims that entitle him to relief. He further contends that there is neither any statutory authority nor case law suggesting that ERISA preempts recovery under the ADEA. Furthermore, Rosenblatt contends that his claims under the ADEA are only for accrued benefits and not for benefit accruals as the defendants suggest.

The ADEA prohibits an employer from failing or refusing to hire or discharging any individual or otherwise discriminating against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age. 29 U.S.C. § 623(a)(1); *Ky. Ret. Sys. v. EEOC*, —— U.S. ——, 128 S.Ct. 2361, 2366, 171 L.Ed.2d 322 (2008). In addition to the broader provision encompassing all age-related discriminatory acts, the ADEA specifically forbids discrimination on the basis of age in employee pension benefit plans. 29 U.S.C. § 623(i). Moreover, it prevents employers from setting a minimum age as a condition of eligibility for retirement benefits[12] and regulates the disbursement of voluntary retirement incentive plans.[13] Thus, a plan participant can seek relief for age discrimi-

nation on the ground that his employer's pension benefit plan does not comply with the ADEA's provisions.

United Way argues that Rosenblatt's ADEA claim should be dismissed because he cannot obtain relief under the applicable ERISA provision that contains similar language to the ADEA statute at issue. Section 4(i)(1) of the ADEA provides that it shall be unlawful for an employer to establish or maintain a defined benefit plan that requires or permits the cessation of an employee's benefit accrual, or the reduction of the rate of an employee's benefit accrual because of age. 29 U.S.C. § 623(i). This provision, along with ERISA § 204(b)(1)(H)(i), was enacted as part of the 1986 Omnibus Budget Reconciliation Act in an effort to prevent the cessation of benefit accruals. Omnibus Budget Reconciliation Act of 1986, Pub. L. No. 99–509, 100 Stat. 1874, 1973–78 (1986). In enacting these amendments, Congress intended that they be interpreted in a consistent manner to have an identical meaning and to prevent any differences in language to create an inference that a difference exists between them. Pub. L. No. 99–509, 1986 U.S.C.C.A.N. (100 Stat.) 3868, 4023–24. Recently, federal courts interpreting these provisions have concluded that plaintiffs cannot recover under ADEA § 4(i) if their claims under ERISA § 204(b)(1)(H)(i) do not succeed. *Hurlic*, 539 F.3d at 1031; *George v. Duke Energy Ret. Cash Balance Plan*, 560 F.Supp.2d 444, 462–63 (D.S.C.2008).

Because Rosenblatt cannot recover under ERISA § 204(b)(1)(H)(i), it follows that he would not be entitled to relief under ADEA § 4(i). A look at the congressional intent reveals that both provisions

---

does not contain any facts suggesting that he is an early retiree, the Court finds that *Humphrey* is inapplicable to the matters presented in this case.

**12.** 29 U.S.C. § 623(*l* ).

**13.** 29 U.S.C. § 623(m).

were to be interpreted similarly to achieve the result sought by Congress. Both provisions contain similar language with respect to preventing the cessation or reduction of benefit accruals in defined benefit plans. A contrary interpretation would render ERISA § 204(b)(1)(H)(i) meaningless as plaintiffs would be able to seek relief under ADEA § 4(i) despite their similarity in construction. Such a ruling would lead to an unreasonable result that was not intended by Congress in its effort to amend both statutes. *Am. Tobacco Co.,* 456 U.S. at 71, 102 S.Ct. 1534. Accordingly, Rosenblatt does not have a claim for relief under ADEA § 4(i).[14]

United Way also contends that Rosenblatt is not entitled to relief under ADEA § 4(a), which provides for broader recovery for age-related disparate treatment. Recently, the Supreme Court discussed the applicability of section 4(a) with regard to pension benefit plan systems. *Ky. Ret. Sys.,* 128 S.Ct. at 2366–71. In *Kentucky Retirement Systems,* the Court held that a plaintiff can only recover under ADEA § 4(a) upon a showing that the discrimination at issue "actually motivated" the employer's decision. 128 S.Ct. at 2371. Relying on *Hazen Paper Co. v. Biggins,* 507 U.S. 604, 113 S.Ct. 1701, 123 L.Ed.2d 338 (1993), the Court reasoned that "[w]hatever the employer's decisionmaking process, a plaintiff alleging disparate treatment cannot succeed unless the employee's age 'actually played a role in that process and had a determinative influence on the outcome.'" *Id.* at 2366 (quoting *Hazen Paper,* 507 U.S. at 610, 113 S.Ct. 1701).

■ In his complaint, Rosenblatt states that employee age was an important factor in United Way's discussions about how to eliminate the funding deficit as reflected by the materials circulated.[15] However, he also noted other concerns such as reducing expenses, the ability to attract and retain participating agencies, avoiding agency investment risks, as well as public relations. His complaint further asserts that public relations was an "important consideration" given that United Way depended on its image to raise funds and that it was significantly threatened by scandals revolving around their pension funds system. Thus, several factors might have been considered by United Way in its decision to convert the defined benefit plan into a cash balance plan.

Taking Rosenblatt's allegations as genuine and truthful, it cannot be said that age had a determinative influence on the outcome of United Way's deliberations. While Rosenblatt claims that the administration of the CB Plan has the purpose and effect of discriminating against older employees, there is nothing in his complaint to suggest that United Way was actually motivated by discrimination in its decision to endorse the conversion. Even if the age of employees at United Way's agencies was a factor presented in the defendants' discussions, Rosenblatt's complaint does not specifically allege that this was the motivating factor for adopting the CB Plan. Accordingly, Rosenblatt's complaint fails to state a claim for relief under ADEA § 4(a).

Rosenblatt further contends that there are other provisions within the ADEA for him to obtain relief. In his supplemental response, he cites sections 4(*l*) and (m) as additional provisions that provide a reme-

---

**14.** For the reasons stated above in discussing Rosenblatt's challenge to the CB Plan under ERISA, the Court further rejects his arguments that his claim is for "accrued benefits" as opposed to "benefit accruals."

**15.** Rosenblatt does not specify any particular statements related to the explanatory materials he refers to in his complaint nor does he explain how much weight was given to them by United Way in reviewing its options for eliminating the deficit.

dy under the ADEA to plaintiffs challenging their pension plans. While Rosenblatt is correct that these provisions do apply to pension plans, the Court finds that they are inapplicable to his lawsuit. Sections 4($l$) and (m) pertain to the setting of a minimum age as a condition of eligibility for retirement benefits and the regulation of disbursing voluntary retirement incentive plans, respectively. 29 U.S.C. § 623($l$)-(m). Rosenblatt's complaint does not allege any facts that would infer that he intended to bring a claim against United Way under either of these provisions. A party must allege specific facts in order to avoid a dismissal for failure to state a claim. *Kane Enters.*, 322 F.3d at 374. Thus, Rosenblatt fails to state a claim under ADEA § 4($l$) and (m). Accordingly, the Court finds that Rosenblatt cannot establish a claim for relief that the CB Plan is in violation of the ADEA.[16]

## B. Minimum Participation Standards

United Way further alleges that Rosenblatt fails to state a claim under section 1052, which regulates the minimum participation standards for ERISA plans. Section 1052 provides that ERISA plans may not require a period of service before an employee is eligible to participate in such a plan if the employee is 21 years of age or older or has completed one year of service. 29 U.S.C. § 1052(a)(1)(A). It also prevents employers from excluding participants based on the attainment of any specific age. *Id.* § 1052(a)(2).

■ In the "Claims" section of his complaint, Rosenblatt cites section 1052

amongst a laundry list of other provisions to argue that United Way's actions are in violation of ERISA. However, his complaint does not contain any facts that are remotely related to any claims he could make under section 1052. Nowhere in his complaint does Rosenblatt allege that he has been declared ineligible to participate in the CB Plan or any other plans sponsored by United Way. Moreover, while his complaint does contain allegations of age discrimination, he does not argue that he has been excluded by United Way from participating in any pension plan because he has attained a certain age. Accordingly, the Court concludes that Rosenblatt fails to state a claim for relief under section 1052.

## C. Notice Requirements

■ United Way argues that Rosenblatt fails to state a claim that he did not receive notice of any reduction in benefit accruals in violation of sections 1025 and 1054(h). In the case of a defined benefit plan, section 1025 requires a plan administrator to furnish a pension benefit statement to a participant upon request or once every three years. *Id.* § 1025(a)(1)(B). Section 1054(h) states that a pension plan may not be amended so as to reduce the rate of benefit accruals unless the administrator provides notice to each plan participant. *Id.* § 1054(h)(1). In providing such notice, the administrator must do so in a manner that is understandable to the average plan participant and sufficient to allow each participant to understand the amendment's effect.[17] *Id.* § 1054(h)(2).

---

**16.** Because the Court holds that Rosenblatt fails to state a claim under the ADEA, it will not discuss whether United Way qualifies as an "employer" of Rosenblatt for purposes of the ADEA.

**17.** Rosenblatt also cites 29 U.S.C. § 1024 as another provision that United Way's conduct

violated. Section 1024 requires a plan administrator to furnish a copy of the summary plan description to each participant along with any modifications or changes within ninety days but no later than 120 days. *Id.* § 1024(b). Here, Rosenblatt's complaint states that he did receive a copy of the sum-

While Rosenblatt's complaint contains allegations as to whether his statements accurately reflect the rate of benefit accruals, it does not contend that United Way failed to provide him with statements or notice of any amendments to the CB Plan. Rosenblatt alleged that the defendants sent him benefit statements informing him that specific amounts of "interest credits" and "contribution credits" had been added to his account. Moreover, he asserted that he continued to rely on the summary plan descriptions provided to him by United Way with respect to his benefit accruals and any changes made to them. From these facts, Rosenblatt received information related to his benefits and any changes to them from the moment United Way converted his plan into a cash balance plan. There is nothing in his complaint suggesting that United Way failed to furnish or refused to produce any information regarding his benefits or any amendments to the CB Plan. Accordingly, the Court finds that Rosenblatt fails to state a claim under sections 1025 and 1054(h).[18]

### D. Breach of Fiduciary Duty

United Way argues that Rosenblatt fails to allege a cognizable breach of fiduciary

duty claim under any ERISA provision cited in his complaint. Specifically, the defendants contend that his complaint fails to allege any specific facts supporting his claim. Moreover, even if he does allege a viable breach of fiduciary duty cause of action, he cannot recover on this theory for a lawsuit that is, in essence, a computation of benefits. Rosenblatt counters by asserting that his complaint contains several facts that specifically state a breach of fiduciary duty claim against the defendants. He further alleges that he is entitled to a determination of his benefits as provided under the applicable ERISA provisions.

Section 1104 sets forth the general duties imposed upon ERISA fiduciaries. 29 U.S.C. § 1104(a); *Bussian v. RJR Nabisco, Inc.,* 223 F.3d 286, 293 (5th Cir.2000). Under ERISA, a plan administrator or any other fiduciary owes a duty of care and loyalty to all plan participants. *Bussian,* 223 F.3d at 294 (citing *Donovan v. Cunningham,* 716 F.2d 1455, 1464 (5th Cir.1983)). While a fiduciary may have financial interests adverse to beneficiaries or participants, ERISA requires that a fiduciary make decisions in the interests of such persons when exercising his duties.[19] *Id.* at 295.

---

mary plan description of the CB Plan. Rosenblatt does not contend that he received the description beyond the time period allotted under section 1024(b) or that the CB Plan has been amended in a manner that would require United Way to furnish an additional summary plan description. Accordingly, the Court holds that Rosenblatt is not entitled to relief under section 1024.

18. Rosenblatt further alleges that United Way is liable under 29 U.S.C. § 1106 to the extent that the CB Plan is treated as a defined contribution plan for funding purposes. However, nowhere in his complaint does he contend that his plan is anything other than a defined benefit plan or a cash balance plan. As previously noted, federal courts have held that cash balance plans are, in essence, defined

benefit plans despite their resemblance to defined contribution plans. *Hurlic,* 539 F.3d at 1029; *Berger,* 338 F.3d at 757; *Campbell,* 327 F.3d at 4; *Esden,* 229 F.3d at 158; *Lyons,* 221 F.3d at 1237. Rosenblatt does not allege any facts in his complaint asserting that the manner United Way funded the CB Plan was more similar to a defined contribution plan as opposed to a defined benefit plan. Thus, there is no reason to treat the CB Plan as a defined contribution plan for funding purposes. Accordingly, the Court rejects Rosenblatt's argument that United Way's actions are in any way a violation of section 1106.

19. The Court shall assume that United Way is a fiduciary with respect to the CB Plan as it does not raise a specific challenge to this issue in its pleadings.

In *Varity Corp. v. Howe,* 516 U.S. 489, 116 S.Ct. 1065, 134 L.Ed.2d 130 (1996), the Supreme Court considered whether a plan administrator was acting in a fiduciary capacity when it misled beneficiaries and, if so, whether that violated the fiduciary obligations of section 1104. The Court concluded that the administrator was acting in a fiduciary capacity, recognizing that ERISA provides that a person is a fiduciary to the extent that such an individual "exercises any discretionary authority or discretionary control respecting management" of the plan or "has any discretionary authority or discretionary responsibility in the administration" of the plan. *Id.* at 498, 116 S.Ct. 1065 (quoting 29 U.S.C. § 1002(21)(A)). It further held that the fiduciary duties that were held to be violated by the plan administrator's intentional misrepresentations were held to arise under section 1104(a). *Id.* at 506, 116 S.Ct. 1065. Thus, in enacting section 1104, Congress did seek to provide remedies for individuals harmed by breaches of fiduciary duties. *Id.* at 506–08, 116 S.Ct. 1065.

■ Rosenblatt alleges several instances where the defendants breached their fiduciary duties towards the end of his complaint. However, the bulk of his complaint does not contain any specific instances where United Way failed to carry out its duties in the interests of plan participants. Although Rosenblatt argues that he received inaccurate statements regarding the amount of benefits he is entitled to receive, he neglects to allege that such inaccuracies developed as a result of any improper behavior the defendants engaged in. Moreover, Rosenblatt does not cite any specific intentional misrepresentations made by United Way that would amount to a breach of fiduciary duty owed to him. Furthermore, while his complaint alleges that the subsequent amendments to the CB Plan violate ERISA, he fails to identify any specific provision that United Way has violated by its amendment. Nor

does he set out any particular facts that suggest that ERISA provisions are not being followed. Hence, Rosenblatt's contentions related to alleged breaches of fiduciary duty, at most, are conclusory allegations, and insufficient to state a claim for relief. *Kane Enters.,* 322 F.3d at 374. Thus, Rosenblatt fails to allege any specific facts that would state a cause of action for a breach of fiduciary duty.

■ The Court also rejects Rosenblatt's argument that the Supreme Court's recent holding in *LaRue v. DeWolff, Boberg & Associates, Inc.,* —— U.S. ——, 128 S.Ct. 1020, 169 L.Ed.2d 847 (2008), provides him with a remedy for his claims. In *LaRue,* the Court held that 29 U.S.C. § 1132(a)(2) authorizes recovery for fiduciary breaches that impair the value of plan assets in a participant's individual account. 128 S.Ct. at 1025. However, Rosenblatt does not argue that his benefits have been impaired in any manner by the defendants' actions. Instead, his complaint squarely focuses on the idea that his benefits have not been properly calculated since United Way's decision to convert his plan into the CB Plan he is currently participating in. Thus, his claims mainly seek a computation or determination of his benefits. The Fifth Circuit has previously rejected private actions for breach of fiduciary duty made in conjunction with claims for determining benefits. *Rhorer v. Raytheon Eng'rs & Constructors, Inc.,* 181 F.3d 634, 639 (5th Cir.1999). Accordingly, the Court concludes that Rosenblatt fails to state a claim, based on United Way's conversion of the defined benefit plan into a cash balance plan and any subsequent amendments, which establishes a breach of fiduciary duty.

## VI. CONCLUSION

Based on the foregoing, the Court hereby GRANTS the defendants' motions to

dismiss for failure to state a claim upon which relief can be granted. Because the defendants' motions to dismiss are granted, the Court further holds that the defendants' motion to strike Rosenblatt's evidence is dismissed as moot.

## FINAL JUDGMENT

Pursuant to the Conclusions reached in the Memorandum Opinion and Order entered in this case, the plaintiff, Stanley Rosenblatt, shall take nothing by his suit. This case is DISMISSED.

This is a Final Judgment.